UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LUIS ROBERTO RODRIGUEZ TREVINO, | : | Case No. 1:08CV339 |
| Plaintiff, | : | |
| | : | Magistrate Judge Timothy S. Black |
| v. | : | |
| RICHARD K. JONES, Sheriff, | : | **RESPONSE TO COURT'S** |
| Butler County Sheriff's Office, et al., | : | **APRIL 3, 2009, ORDER DIRECTING** |
| | : | **IN CAMERA REVIEW OF** |
| Defendants. | : | **PRIVILEGED MATERIAL** |

## PROCEDURAL HISTORY

On August 18, 2008, Plaintiff issued a subpoena to Richard H. Wilkens, Jr., (Wilkens) seeking documents and testimony. Wilkens is not a party to this action. Plaintiff asserts that Wilkens is merely a fact witness, and seeks his knowledge as to Defendants' treatment of Plaintiff and undocumented workers in Butler County, Ohio. (See Doc. 41, at 2). Pursuant to this Court's order, Wilkens through Counsel, produced two sets of documents to Counsel for Plaintiff. The first set was given to counsel for Plaintiff on February 20, 2009, and the second was produced on March 26, 2009. On April 2, 2009, at 2:09 PM, counsel for Plaintiff sent an email to Counsel for Wilkens asking why some documents had been redacted. See Exhibit 1, Email from Plaintiff's Counsel. This was the first time Counsel for Plaintiff had made any inquiry into Wilkens' document production. This message was not received by Counsel until approximately 5:00 PM. Wilkens' deposition was scheduled for April 3, 2009, at 10:00 AM.

On the morning of the deposition, all Counsel for parties and interested persons were

present at the deposition location. As a prelude to the deposition, Counsel for Wilkens explained the key word process used by Wilkens to find responsive documents and the software program used to redact the documents. Plaintiff's Counsel then stated, for the first time, his intention to seek judicial intervention regarding the redacted documents. After a discussion among the parties, everyone agreed that it was futile to proceed with the deposition before the Court's disposition of the redaction issues. Counsel for Wilkens specifically objected to subjecting Wilkens to two depositions and further interrupting his official duties.

Shortly thereafter, the parties and interested persons contacted the Court via telephone. At that time, Counsel for Plaintiff requested the Court to view the unredacted documents <u>in camera</u>. The Court ordered Counsel for Wilkens to submit unredacted versions of the documents for <u>in camera</u> review and provide a brief explaining the privileges.[1] The deadline for that submission was set for April 17, 2009. The Court further ordered Plaintiff to brief the issue by April 24, 2009, and the Court finally ordered Counsel for Wilkens to submit a final reply brief on April 29, 2009.

The United States does not know which redacted document(s) is/are challenged. Accordingly, once Counsel for the Plaintiff specifically identifies a document that he believes is not properly subject to a privilege, the United States will respond, asserting which privilege applies, document by document. At the Court's request, all of the redacted and unredacted

---

[1] The procedural posture is not clear for this brief. It does not appear to be a motion to compel under Fed. R. Civ. P. 37, because counsel for Plaintiff has not complied with the good faith requirement found in that and Local Rule 37.2. Additionally, counsel for Plaintiff did not attempt to meet the high burden required to compel evidence from a non party witness. <u>American Elec. Power Co. v. United States</u>, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (internal citations omitted). Additionally, it seems clear by the court's briefing schedule that this is not a motion to compel.

documents are submitted today in paper form as Exhibits 2 (redacted) and 3 (unredacted - in camera). Many of the redactions in the documents are redacting the exact same language as that language appears in various email streams on different dates. The United States has also filed a copy of the documents that were produced without any assertion of any privilege. Exhibit 5.

## FACTS

Wilkens is the Resident Agent in Charge (RAC), Office of Investigations, Immigration and Customs Enforcement (ICE), Cincinnati, Ohio. Wilkens has been the Resident Agent in Charge at all times relevant to this litigation. As the RAC, Wilkens is responsible for overseeing all functions of the Office of Investigations for twenty-three counties in Ohio, including Butler County. Wilkens has never observed members of Butler County Sherriff's Office ("BCSO") interact with undocumented workers.

In the course of his duties, Wilkens evaluates applicants for 287(g) authorization. The 287(g) program is a partnership between ICE and various non-federal law enforcement agencies (LEA). LEAs participating in the 287(g) program can receive differing authorizations of federal immigration authority. The two basic components of the program include correctional monitoring and task force operations. LEAs participating in correctional monitoring interview persons arrested and in custody for offenses to ascertain their immigration status. LEAs participating in task force enforcement operations can participate in work place enforcement operations at the directions of ICE.

The BCSO applied for both types of immigration authority. On February 5, 2008, they

completed the steps necessary to receive a authority to conduct correctional monitoring.[2] Their request for authority to participate in task force operations has not been completed.

Through the partnership, ICE directs LEAs in enforcing portions of federal immigration law. The LEAs who wish to participate in the 287(g) program must apply to and gain acceptance from, ICE. ICE reviews the applications, conducts site visits at the LEAs and determines what, if any, authority to grant the LEAs. LEAs must then enter into a Memorandum of Agreement with ICE which establishes the responsibilities of each party to the MOA. MOAs are tailored to each individual LEA and are the result of both negotiations between ICE and the LEA and ICE's evaluation of the LEA's capabilities. During the application and evaluation process, ICE officials candidly discuss the LEA's applications, and forward their reasoned conclusions to headquarters. This open and honest exchange of observations and opinions is essential to determining whether an LEA should receive immigration enforcement authority under 287(g). Once provisionally accepted into the program, the LEAs receive training on enforcing portions of federal immigration law. Only after successfully signing the MOA and completing training is an LEA officially in the 287(g) program.

Once accepted in the program, LEAs are continually monitored to ensure they meet ICE standards and warrant continued enrollment in the program. As a result, ICE personnel continue to discuss performance and capabilities of various LEAs between themselves and headquarters even after an LEA has fully entered the program.

Open and frank communications between ICE officers is absolutely essential to the

---

[2] Significantly, the plaintiff's arrest occurred on January 2, 2007 almost one full year prior to BCSO being approved to participate in the 287(g) program. The relevance of the documents and testimony sought is therefore circumspect.

287(g) program. If such communication and exchange of facts were stifled in any way, the program could not be effectively administered.

Wilkens received a subpoena to provide documents related to four categories of information. Exhibit 4, Subpoena dated August 18, 2008. The first category asks generally for information shared within the agency about BCSO's fitness for the 287(g) program. There is no date limitation on this request. The second category asks for documents relating to Defendant Robert E. Medellin. The third category asks for documents relating to Plaintiff. The final category asks for documents describing how "state officials" may properly enforce immigration law.

Pursuant to this Court's order and its designation of Wilkens as a fact witness, Wilkens complied with this subpoena and provided discovery to counsel for the parties. Exhibit 5. Redactions were made to some of the documents because the material is protected under either the deliberative process, the attorney client, or law enforcement privilege.

The redacted information contains, in part, discussions between agents at various echelons discussing the pros and cons of various LEA' s participation in the 287(g) program. These discussions occurred while LEAs were in the application and evaluation process to gain 287(g) authorization. Additionally, the nature of the 287(g) program requires constant monitoring of LEAs who had been granted authority by ICE officers to ensure the LEAs complied with the program.

The open exchange of ideas and information is absolutely essential to the proper functioning and monitoring of the 287(g) program, and without this quality of discussion, the program would be impossible to implement and manage.

Also, ICE agents in the field must cultivate close working relationships with LEAs. If discussions between ICE agents about LEAs became public it could potentially damage those relationships in the short run. The long run damage would be more significant, because ICE agents would cease to communicate freely for fear of their comments being disclosed to persons outside the agency and its decision making process.

## LAW

**A.     An agency's deliberative process is privileged and immune from disclosure.**

Disclosure is not proper if the information a litigant seeks is privileged. It is long established in both statutory and common law that the disclosure of inter-agency and intra-agency deliberations and advice may impair the federal government's decision-making functions because it tends to inhibit the frank and candid discussion necessary for effective government. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-151 (1975). The deliberative process privilege serves as a safeguard against this danger. As Justice Reed explained in first articulating the privilege:

> Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act.

Kaiser Aluminum & Chem. Corp. V. United States, 157 F. Supp. 939, 945-46 (Ct. Cl. 1958).

Courts have recognized that the deliberative process privilege generally serves three basic purposes: (1) to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; (2) to protect against premature disclosure of proposed

6

policies before they have been finally formulated or adopted; and (3) to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reason for the agency's action. Schell v. United States Dept. of Health and Human Services, 843 F.2d 933, 939 (6th Cir. 1988), quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1981). See also, Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002), Alexander v. FBI, 192 F.R.D. 50, 55 (D.D.C. 2000). The privilege covers recommendations, draft discussions, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Schell, 843 F.2d at 940; See also, Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999); National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir. 1988).

In Schell, the Sixth Circuit examined whether a memorandum expressing the frank views of some administrative law judges in the Social Security Administration regarding certain personnel matters and procedures should be withheld from disclosure under Exemption 5 of the Freedom of Information Act, which embodies the deliberative process privilege. In holding that the memorandum in question was the kind of candid document expressing personal views "which, if disclosed, would likely stifle honest and frank communication within the agency," the court rejected the argument that the document must relate to the formation of some important public policy to be protected from disclosure. Schell, 843 F.2d at 940. The court explained that even purely factual material could potentially be protected from disclosure, and that a document's failure to antedate the adoption of agency policy does not remove it from protection. Id. at 940-41. The court further noted that requiring that the agency show that a document

7

related to a specific policy or decision is an unduly restrictive interpretation of the privilege. Quoting from the Supreme Court, the court noted:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process. Id. at 941-42, quoting from NLRB, 421 U.S. at 151 n.18 (emphasis added).

Thus following the broad mandate of the Supreme Court, the Schell court held that it is the free flow of advice, and not the value of any particular piece of information, that the deliberative process privilege is designed to protect. Schell, 843 F.2d at 942. On that basis, the court held that the memorandum in question was exempt from disclosure "even if the particular advice cannot be shown to have any great social or decisional value." Id. See also Hinkley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998) (noting that the D.C. Circuit has applied the deliberative process privilege to protect materials that concern individualized decision-making rather than the development of generally applicable policy); Mapother v. Department of Justice, 3 F.3d 1533, 1535-40 (D.C. Cir. 1993) (protecting under the deliberative process privilege a report consisting of mostly factual material in which the Government did not develop new policies but rather applied existing law); Formaldehyde Institute v. Department of Health and Human Services, 889 F.2d 1118, 1123,-24 (D.C. Cir. 1989) (rejecting defendant's argument that a review letter was not protected by the deliberative process privilege because the Government could point to no policy decision that was the subject of the deliberations); and McPeek v. Ashcroft, 202 F.R.D. 332, 334-35 (D.D.C. 2001) ("the advancement of the societal interest in having government agencies benefit from the candid and uninhibited exchange of opinions and

8

recommendations is the same whether the government is adopting a policy or taking an action against an individual").

The deliberative process privilege protects evidence from disclosure if it is both predecisional and deliberative in nature containing opinions, recommendations, or advice about agency decisions. See Renegotiation Bd. V. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975; Klamath Water Users Protective Ass'n v. United States Dep't of the Interior, 189 F.3d 1034, 1043 (9th Cir. 1999), aff'd, 532 U.S. 1 (2001); In re Sealed Case, 121 F.3d 729, 735-36 (D.C. Cir. 1997) (citing cases); Assembly of Cal. v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992); Coastal States Gas Corp. v. United States Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

Generally, a document is predecisional "if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141,151 (D.C. Cir. 2006) (quoting Coastal States Gas Corp. v. United States Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Documents prepared for the purpose of assisting an agency decision-maker in arriving at a decision are predecisional. See Hopkins v. United States Dep't of Housing & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991); National Congress for Puerto Rican Rights v. City of N.Y., 194 F.R.D. 88, 92 (S.D.N.Y. 2000). 2004). Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999); National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir. 1988). Written summaries of facts are also covered under the privilege when prepared for the sole purpose of assisting the agency make a decision. Montrose Chemical Corp. of California v. Train, 491 F. 2d 63, 68 (D.C. Cir. 1974).

9

Finally, to justify disclosure, the claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 328-29 (D.D.C. 1966).

### B. Communications between federal attorneys and their agency clients is privileged and immune from disclosure.

The attorney-client privilege protects communications relating "'to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily either an opinion of law or legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort.'" Guy v. United Healthcare Corp. 154 F.R.D. 172, 177 (S.D. Ohio 1993) (internal citations omitted).

It is "clear that an agency can be a 'client' and agency lawyers can function as 'attorneys'" and can invoke the attorney-client privilege. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980).

The purpose of the attorney-client privilege is to protect from discovery in civil litigation those "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Central, Inc. v. Department of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). Therefore, the privilege "normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto." Matter of Fischer, 557 F.2d 209, 211 (9th Cir. 1977) (citation omitted). Such confidential communications are shielded from disclosure in order to encourage full and frank discussion between the client and his legal advisor. Mead Data, 566 F.2d at 252. Indeed, as the Supreme Court has phrased it, "[the privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully

10

informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Limitations on the attorney-client privilege have therefore necessarily been construed narrowly. Martin v. Later, 686 F.2d 24, 32 (D.C. Cir. 1982).

### C. Disclosure of information which could threaten the safety or effectiveness of law enforcement should be done so cautiously.

Law enforcement agencies have an identified interest in preventing disclosure of procedures and tactics. King v. CANDE, 121 F.R.D. 180, 192 (S.D.N.Y. 1988). Disclosure of the training received and procedures used by law enforcement officers can frustrate legitimate law enforcement efforts and endanger the lives of officers. Thus disclosure of such information should only be done when necessary and should be protected by a tightly worded protective order. Kelly v. San Jose, 114 F.R.D. 653, 666 (N.D. Cal. 1987).

## ARGUMENT

### A. The redacted information is covered by the deliberative process privilege and is immune from disclosure.

The first prong one must satisfy when looking at whether the deliberative process privilege is applicable to information is if the communication was "predecisional." A decision by ICE to allow BCSO to participate in the correctional monitoring portion of the 287(g) program did not take effect until February 5, 2008. On that date, both ICE and BCSO fulfilled the two prerequisites for granting authority under the 287(g) program: signing the MOA and completing training. Thus all communications discussing BCSO prior to that date are clearly predecisional. However, BCSO, like all LEAs participating in the 287(g) program, is constantly monitored by ICE officers and evaluated for continued participation in the program. Thus, conversations of that nature are also covered.

Additionally, BCSO requested authorization to participate in the task force enforcement operations portion of the program but has not yet been given training for this function. As such, there is no final decision by ICE on that matter, and BCSO is still being evaluated for this role. Thus, all opinions, comments, and discussions at issue in the redacted information are predecisional.

The second prong of the analysis is satisfied if the information is "deliberative." The information redacted under the deliberative process privilege contains the exchange of opinions and evinces a back and forth between agency personnel prior to a decision. On their face, the comments are "deliberative." Judicial Watch, 449 F.3d at151 (deliberative reflect the give-and-take of the consultative process). Furthermore, when reading these materials it is clear they contain opinions of agency personnel, which have not yet been adopted by the agency as official positions. Because the transmission of these opinions was done in an attempt to influence agency decisions, they are deliberative. Grand Cent., 166 F.3d at 482.

In sum, because the information Plaintiff is seeking is predecisional and deliberative it is covered by the deliberative process privilege and is immune from disclosure.

Plaintiff's subpoena, on its face, openly seeks the disclosure of privileged information. Plaintiff has directly asked for internal information and communications made with the intent to inform or influence an agency decision prior to that decision being made. Renegotiation Bd., 421 U.S. at 184 (information covered by the deliberative process is predecisional and produced to help make a decision). Plaintiff does not attempt to justify this request or explain how he meets the showing necessary to destroy this privilege. Plaintiff cannot establish for this Court that his need for the redacted information outweighs the adverse impacts which would be created

by disclosure. Carl Zeiss, 40 F.R.D. at 328-329.

Plaintiff has asked for :

> documents, discussions, records, and reports discussing your or ICE's involvement with BCSO immigration raids or activities; all discussions and reports regarding the legality or illegality of BCSO activities, regarding immigration or otherwise; all reports prepared, used or considered regarding the BCSO; all internal and external discussion, complaints, reports, and correspondence regarding the immigration activities of BCSO; and all research, investigations, and documents produced, used, or considered with respect to D.S./ICE entering into the 287(g) Memorandum of Agreement between the Department of Homeland Security (D.S./ICE) sought and received by the Butler County Sherriff's Department, including but not limited to all documents regarding or referring tot he 287(g) Memorandum of Agreement.

Exhibit 4.

Plaintiff has asked for internal discussions that show the sharing of facts, opinions, and give-and-take between agency personnel used to make decisions about BCSO's participation in the 287(g) program. Disclosure of these conversations and exchanges would chill their future conversations, impeding ICE's ability to gain accurate data about LEAs participating in the 287(g) program. In other words, he seeks to discover how the agency decision was made. This is a blatant attempt to destroy the deliberative process privilege.

As noted above, ICE relies on the candid assessments and opinions of its field officers to guide and inform headquarters decisions when granting authority under 287(g) and allowing LEAs to continue in the program. If officers could no longer speak freely, ICE could no longer ensure the integrity of the 287(g) program.

Plaintiff has asserted that he is only looking for facts related to the treatment he and other undocumented aliens received from Defendants. See Doc. 41, at 2. There is nothing in the redacted documents which is relevant to that search, and consequently his need for the

information is very low. The potential damage to the agency from disclosure far outweighs the minuscule need Plaintiff may have in the redacted information. See Carl Zeiss, 40 F.R.D. 328-29. As such, Plaintiff cannot meet the standard required to trump the privilege and the information is immune from disclosure.

      **B.**     **Information covered by the attorney-client privilege should not be disclosed.**

Plaintiff has offered no reason why he is entitled to documents covered by the attorney-client privilege, and therefore the documents are properly withheld. Communications with counsel are vital to effective government and in the absence of waiver, this privilege can only be shattered if there is evidence of intent to commit fraud or tort. Guy, 154 F.R.D. at 177. None of these exceptions are present in this situation, nor has counsel for Plaintiff alleged otherwise. Thus, no disclosure is warranted.

      **C.**     **Law enforcement confidential information should not be disclosed, or should be subject to a strong protective order.**

Information regarding how law enforcement operates can impact the effectiveness and safety of law enforcement personnel. The small number of documents covered by this privilege contain information that is not relevant to Wilkens testimony as a fact witness because they do not related to any thing he has personal knowledge over. They do contain information that discloses how law enforcement personnel operate in potentially dangerous situations (transferring prisoners). The dissemination of such information could be detrimental to law enforcement officers.

Because the information is not relevant for the purposes of discovery, and it is covered by the law enforcement privilege it is properly withheld.

## CONCLUSION

Some of the documents produced by Wilkens have been redacted and three privileges have been asserted. Once the Plaintiff designates which of the redacted documents are improperly redacted and the United States can address each document's privilege(s), such documents will be reviewed in camera. After that review, Counsel for Wilkens asks this Court to allow the redacted information to remain free from disclosure.

Respectfully submitted,

GREGORY G. LECHERWITE
United States Attorney


s/Donetta D. Wiethe
DONETTA D. WIETHE (0028212)
Assistant United States Attorney
221 East Fourth Street
Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Fax: (513) 684-6972
Donetta.Wiethe @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response to Court's April 3, 2009, Order Directing In Camera Review of Privileged Material was served this 17th day of April, 2009,

electronically on:

**Jennifer Lynn Branch**
jbranch@gbfirm.com

**Daniel T. Downey**
danieldowney@isaacbrant.com,amyhoover@isaacbrant.com

**Alphonse Adam Gerhardstein**
agerhardstein@GBfirm.com,jthompson@gbfirm.com,lsinclair@gbfirm.com,areino@gbfirm.com,semrick@gbfirm.com

**Steven Gerard LaForge**
stevelaforge@isaacbrant.com,cathybittner@isaacbrant.com

**Andrew Neil Yosowitz**
any@isaacbrant.com,asr@isaacbrant.com

s/Donetta D. Wiethe
DONETTA D. WIETHE (0028212)
Assistant United States Attorney
