


2007OPK012

# ROBIN N. PIPER
## BUTLER COUNTY PROSECUTING ATTORNEY
Government Services Center • 11th Floor
P.O. Box 515 • 315 High St. • Hamilton, OH 45012-0515
Phone 513-887-3474 • Fax 513-785-5206

March 2, 2007

RECEIVED

MAR 1 2 2007

Attorney General of Ohio
Opinions Section

The Honorable Marc Dann
Attorney General of Ohio
State Office Tower
30 East Broad Street, 17th Floor
Columbus, Ohio 43215-3428

Re: *Request for Opinion concerning cooperation of county sheriff with Immigration and Customs Enforcement agency*

Dear Mr. Dann:

Pursuant to R.C. §311.07, the Sheriff of Butler County has a duty to preserve the public peace.
Pursuant to R.C. §307.85(A):

> The board of county commissioners of any county may participate in, give financial assistance to, and cooperate with other agencies or organizations, either private or governmental, in establishing and operating any federal program enacted by the congress of the United States, or with any such agency or organization that is receiving federal funds pursuant to a federal program, and for such purpose may adopt any procedures and take any action not prohibited by the constitution of Ohio nor in conflict with the laws of this state."

Pursuant to R.C. §341.21:

> The board of county commissioners may direct the sheriff to receive into custody prisoners charged with or convicted of crime by the United States, and to keep those prisoners until discharged.
>
> . . .
>
> A sheriff or jailer who neglects or refuses to perform the services and duties directed by the board by reason of this division, shall be liable to the same penalties, forfeitures, and actions as if the prisoner had been committed under the authority of this state.

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. sections 1357(g), authorizes the U.S. Attorney General to:

> [E]nter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law.

The Butler County Sheriff has requested our advice and instruction as to two proposed agreements with the Department of Homeland Security for cooperation between the Sheriff and the U.S. Immigration and Customs Enforcement office (ICE) pursuant to this statute. The first agreement would allow the Sheriff to detain illegal aliens in the Butler County jail, in accordance with ICE policy and procedure. The second agreement would provide for the Sheriff to assign two of his deputy sheriffs,

appointed under R.C. §311.04, to serve as a part of a Regional Task Force to be established by ICE, and to perform certain immigration investigations under the direction and control of the Regional Director of ICE. We have attached copies of the two proposed agreements for your information.

Because we are uncertain as to what advice to provide to the Sheriff concerning his authority to enter into, or perform, these agreements, we are requesting your opinion as to the following questions:

1. Pursuant to the Sheriff's duty, under R.C. §311.07, to "preserve the public peace," does the Sheriff have the authority to arrest and detain aliens, found in Butler County, based upon evidence establishing probable cause to believe that such aliens have violated federal immigration laws?

2. If the Sheriff lacks the authority under Ohio law to arrest and detain illegal aliens found in Butler County, may the Sheriff, pursuant to an agreement with the U.S. Attorney General under 8 U.S.C. §1357(g), perform functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States?

3. If not, does the Board of County Commissioners possess the authority, pursuant to R.C. §307.85(A), to enter into one or more agreements with the U.S. Attorney General, under 8 U.S.C. §1357(g), and authorize the Sheriff, and his designated deputies, to perform functions of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States?

4. Pursuant to R.C. §341.21(A), does the Board of County Commissioners possess the authority to direct the Sheriff to receive into custody suspected legal aliens who are being detained by ICE for deportation purposes, but who have not been charged with a crime by the United States?

5. Does the Sheriff have the authority to detain aliens who have been charged with, or convicted of, crime by the state of Ohio, but who the Sheriff would be required to discharge under Ohio law, solely on the basis of a holder issued by ICE where such alien has not been charged with or convicted of crime by the United States?

6. If the Sheriff lacks the authority under state law to detain aliens based upon a holder issued by ICE, may either the Sheriff, or the Board of County Commissioners, obtain such authority through an agreement with the U.S. Attorney General under 8 U.S.C. §1357(g), to perform functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States?

Your expedited advice in regard to these issues will be appreciated.

Sincerely Yours,

Robin N. Piper
Prosecuting Attorney of Butler County

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Butler County Sheriff's Office, (BCSO), hereinafter referred to as the "Law Enforcement Agency" (LEA), pursuant to which ICE authorizes up to a maximum of two (2) nominated, trained, and certified LEA personnel to perform certain immigration enforcement functions while assigned full-time to the ICE Office of Investigations within the RAC Cincinnati, Ohio as specified herein. It is the intent of the parties that these delegated authorities will enable the LEA to conduct criminal investigations, which may include the identifying and processing of immigration violators under the direct supervision of ICE. ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected BCSO personnel (participating LEA personnel) will be nominated, trained, and thereafter perform certain functions of an immigration officer in cases with a nexus to Butler County, Ohio. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken by participating LEA personnel pursuant to this agreement.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), also codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of the Department of Homeland Security, acting through the Assistant Secretary of ICE, to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel are subject to direct ICE supervision while performing immigration-related duties pursuant to this MOA. For the purposes of this MOA, ICE officers/agents will provide supervision for participating LEA personnel only as to immigration enforcement functions and any related investigative activity that is conducted by those personnel. BCSO retains supervision of all other aspects of the employment of and performance of duties by participating BCSO personnel.

# IV. ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory 5-week training, as described in Section VIII, in the enforcement of federal immigration laws and policies as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. Only participating LEA personnel who are selected, trained, authorized, and supervised, as set out herein, have authority pursuant to this MOA to conduct the immigration officer functions enumerated in this MOA.

Participating LEA personnel performing immigration-related duties pursuant to this MOA will be LEA officers who are currently Peace Officers in the State of Ohio and currently serving or have previously served as full-time Detectives within the BCSO for a minimum of two years. The LEA personnel will be assigned to the ICE Resident Agent in Charge (RAC), Cincinnati, Ohio, on a full-time basis at a location(s) designated by ICE. BCSO personnel will be authorized 287(g) authority solely within an ICE led criminal investigative Task Force. This Task Force will be established at such time that ICE resources make such a Task Force practical. Participating LEA personnel will be exercising their immigration-related authorities during the course of Task Force investigations solely at the direction of the ICE RAC, Cincinnati or his designee. The LEA will conduct no independent immigration related enforcement activity or criminal investigations either within or outside of Butler County, Ohio unless specifically authorized by the ICE RAC, Cincinnati or his designee. The LEA personnel may be assigned and/or co-located as Task Force officers to assist ICE with criminal investigations deemed appropriate by ICE. Every effort will be made to focus on violations with a nexus to Butler County, Ohio whenever possibly.

The mission of these various LEA assignments are summarized as follows and may include but are not limited to:

Document and Benefit Fraud Investigations: The LEA will identify and investigate high-profile individuals and/or organizations engaged in the sale, distribution, transfer, possession and/or production of fraudulent identity documents being utilized in the furtherance of undocumented aliens avoiding detection and removal from the United States. Investigations may also include the identification and of individuals and/or organizations involved in Fraud including but not limited to Marriage Fraud, Visa Fraud, Asylum Fraud as well as Fraud relating to State and Local benefits or violations.

Drug Smuggling Investigations: The LEA will identify and investigate individuals and/or organizations involved in the illegal sale, distribution, importation, possession and/or production of illegal narcotics with a nexus to the international border.

Alien Smuggling and Human Trafficking Investigations: The LEA will identify and investigate individuals and/or organizations involved in recruitment, transportation, harboring or importation of undocumented aliens into the United States for the purpose of financial gain, involuntary servitude, bondage, slavery, peonage and/or commercial sex acts.

2

Subject to disclosure and/or Grand Jury secrecy rules, every effort will be made to periodically update the BCSO Sheriff or his designee as to the activities and investigations being conducted by BCSO LEA personnel within the ICE led Task Force.

The LEA will immediately contact the ICE RAC Cincinnati or his designee, when matters of investigative interest to ICE should arise in the course of performing duties imparted through the 287(g) authority including information provided by alien detainees. Matters of ICE interest may include but are not limited to:

1. The death or serious injury of an alien(s)
2. Information relating to aliens being smuggled into the United States, victims of human trafficking, or aliens being held hostage.
3. Significant seizures of cash (over $10,000.00) and any information relating to bulk cash smuggling or money laundering.
4. Seizures of or information relating to international drug sales or trafficking.
5. Seizures of or information relating to commercial (inbound or outbound) shipments of merchandise or technology.
6. Information relating to cyber crime or sex tourism.
7. Alien related arrests, which could reasonably be expected to generate media interest.
8. Arrests of aliens from "Special Interest" countries (training in this area will be provided by the ICE RAC Cincinnati or his designee as part of the 287(g) transition).

ICE is aware that several of the aforementioned areas of interest may also potentially include State or local violations, which may make them amenable to prosecution or investigation by the LEA. In these cases, ICE would work jointly with the LEA to provide the best use of Federal, State and local resources for the investigation.

## V. DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel will be authorized to utilize their 287(g) authority solely under the direct supervision of ICE, to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(1)) and to process for immigration violations those individuals who are convicted of State or Federal felony offenses;

- The power and authority to arrest without warrant any alien entering or attempting to unlawfully enter the United States, or any alien in the United States, if the office has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1);

**Formatted:** Bullets and Numbering

**Deleted:** Criminal Investigation Section (CIS): The LEA personnel assigned to CIS by statute are charged with the responsibility of identifying criminal enterprises and other forms of organized criminal activities. ¶
¶
Anti-Gang Unit: The LEA personnel assigned to the anti-gang unit engage in law enforcement actions that are targeted against gang activity. ¶
¶
Drug Enforcement Unit: The LEA personnel assigned to these various drug enforcement units are involved with illegal trafficking in narcotics investigations, quite often they encounter individuals who may be in the country illegally. ¶
¶
Community Action Teams (CAT): The LEA personnel assigned to the Community Action Teams are officers who have been assigned to these special units and charged with the responsibility of assisting local authorities in urban areas who have requested assistant¶
¶
DESIGNATION OF AUTHORIZED FUNCTIONS

**Deleted:** MOA :

3

- The power and authority to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2). Notification off such arrest must be made to ICE within twenty-four (24) hours;

- The power and authority to serve warrants of arrest for immigration violations pursuant to 8 C.F.R. § 287.5(e)(3);

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)), to complete required criminal alien processing, including fingerprinting, photographing, and interviewing of aliens, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review;

- The power and authority to prepare charging documents (INA Section 239, 8 C.F.R. 239.1; INA Section 238, 8 C.F.R 238.1; INA Section 241(a)(5), 8 C.F.R 241.8; INA Section 235(b)(1), 8 C.F.R. 235.3) including the preparation of a Notice to Appear (NTA) application or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors;

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for processing aliens in categories established by ICE supervisors; and

- The power and authority to detain and transport (8 C.F.R. § 287.5(c)(6)) arrested aliens to ICE-approved detention facilities.

## VI. DETENTION ISSUES

The LEA is expected to pursue to completion prosecution of the state or local charges that caused the individual to be taken into custody. ICE will assume custody of individuals who have been convicted of a State or local offense only after such individuals have concluded service of any sentence of incarceration. ICE will also assume custody of aliens with prior criminal convictions and when immigration detention is required by statute. The ICE Detention and Removal Field Officer Director or his designee will assess on a case-by-case basis the appropriate removal vehicle to be employed and/or whether to assume custody of individuals that do not meet the above criteria based on special interests or other extenuating circumstances after processing by the LEA. The immigration laws provide ICE Detention and Removal Operations (DRO) with the discretion to manage limited ICE detention resources, and ICE Field Office Directors may exercise this discretion, in appropriate cases, by declining to detain aliens whose detention is not mandated by federal statute.

If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which, the LEA will provide, for a reimbursable fee, detention of incarcerated aliens in LEA facilities, upon the completion of their sentences. The LEA facility will be expected to meet the ICE detention standards for either a less than 72-hour

or over 72-hour facility as determined by ICE, and consistent with the anticipated detention period.

The parties understand that the LEA will not continue to detain an alien after that alien is eligible for release from the LEA's custody in accordance with applicable law and LEA policy, except for a period of up to 48-hours, excluding Saturdays, Sundays, and any holiday, pursuant to an ICE detainer issued in accordance with 8 C.F.R. § 287.7, absent an IGSA in place as described above.

Upon completion of processing and release from the LEA's affiliated dentention facilities of an individual who participating LEA personnel have determined to be a removable alien, the alien will be transported by the LEA on the same day to an ICE designated office or facility, after notification to and coordination with the ICE supervisory officer, so that no further detention costs will be incurred by ICE.

## VII. NOMINATION OF PERSONNEL

The BCSO will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of Detective experience and currently maintain certified Peace Officer status within the State of Ohio. All candidates must be full-time employees. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any future expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties, but will be subject to all the requirements of this MOA.

## VIII. TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory 5-week training tailored to the immigration functions to be performed. Training will take place at a mutually designated site in Butler County, Ohio, and will utilize ICE-designed curriculum and competency testing.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) Civil Rights laws; (vi) the U.S. Department of Justice "Guidance Regarding the Use Of Race By Federal Law Enforcement Agencies," dated June 2003; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligation under federal law and the Vienna Convention on Consular Relations to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this

*Margin annotations:*
- Deleted: LEA work
- Deleted: .
- Deleted: ¶
- Formatted: Bullets and Numbering

MOA pursuant to Section XX, below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.  CERTIFICATION AND AUTHORIZATION

The ICE Training Division will certify in writing to Brian Moskowitz, the ICE Special Agent in Charge, the names of those LEA personnel who successfully complete training and pass all required testing. Upon receipt of Training Division certification, Brian Moskowitz, the ICE Special Agent in Charge, will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of one year from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE RAC, Cincinnati, or designee, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time by ICE or the LEA. Such revocation will require immediate notification to the other party to this MOA. Richard K. Jones, the Butler County Sheriff, and Brian Moskowitz, the ICE Special Agent in Charge, will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA shall constitute revocation of all immigration enforcement authorizations delegated hereunder.

## X.  COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material.

ICE will provide the instructors and training materials. The LEA is responsible for the salaries and benefits, including overtime, for all of its personnel being trained or performing duties under this MOA, and for those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA candidates' travel, housing and per diem affiliated with the training required for participation in this agreement. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which LEA will provide, for a reimbursable fee, transportation for all incarcerated aliens in the LEA's facilities, upon the completion of their sentences, or upon completion of processing in those circumstances in which state or local prosecution is not available, to a facility or location designated by ICE. If ICE determines that it is necessary, the LEA will provide ICE, at no cost, with an office within each participating LEA facility for ICE supervisory employees to work.

ICE agrees to be responsible for the purchase, installation, and maintenance of technology (computer/IAFIS/Photo and similar hardware/software) necessary to support the investigative functions of participating LEA personnel at each LEA facility with an active 287(g) program. The use of this equipment is to be limited to the performance of responsibilities authorized by this MOA under section 287(g) of the INA by participating LEA personnel. ICE also agrees to

6

Deleted: the SAC/Detroit, MI

Deleted: the

Deleted:

Deleted: ¶
¶

Deleted: ¶
ICE will provide the instructors and training materials. The LEA is responsible for the salaries and benefits, including overtime, for all of its personnel being trained or performing duties under this MOA, and for those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA candidates' travel, housing, and per diem affiliated with the training required for participation in this agreement. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

Deleted: If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which LEA will provide, for a reimbursable fee, transportation for all incarcerated aliens in the LEA's facilities, upon the completion of their sentences, or upon completion of processing in those circumstances in which state or local

provide the necessary technological support and software updates for use by participating LEA personnel to accomplish the delegated functions. Such hardware, software, and other technology purchased or provided by ICE, shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, or when deemed necessary by the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, MI.

Deleted: the SAC/Detroit, MI

## XI. ICE SUPERVISION

Management and/or supervisory special agents of the ICE RAC Cincinnati or his designee will supervise immigration enforcement activities and related criminal investigations conducted by the participating LEA personnel. Participating LEA personnel are not authorized to perform immigration officer functions or conduct related investigations, except when working under the direct supervision of the ICE RAC, Cincinnati or his designee.

Deleted: Immigration enforcement activities conducted by the participating LEA personnel will be supervised

Deleted: and directed by ICE supervisory officers or the designated team leader in Cincinnati, Ohio.

Deleted: of an

Deleted: officer, or when acting pursuant to the guidance provided by an ICE agent.

Participating LEA personnel shall give timely notice to the ICE RAC, Cincinnati or his designee, within 24 hours of any detainer issued under the authorities set forth in this MOA. The actions of participating LEA personnel will be reviewed by the ICE RAC, Cincinnati or his designee, on an ongoing basis to ensure compliance with the requirements of the immigration laws and ICE investigative procedures, and to assess the need for individual additional training or guidance.

Deleted: supervisory officer

Deleted: supervisory officers

Deleted: and procedures

For purposes of this MOA, ICE officers/agents will provide supervision of participating LEA personnel only as to immigration enforcement functions and related investigations being conducted under the auspices of ICE. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities or related investigative activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

Deleted: ¶

If a conflict arises between an order or direction of an ICE supervisory officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to Brian Moskowitz, the ICE Special Agent in Charge, or designees, and Richard K. Jones, the Butler County Sheriff, or designee, when circumstances safely allow the concern to be raised. Brian Moskowitz, the ICE Special Agent in Charge and Richard K. Jones, the Butler County Sheriff, shall attempt to resolve the conflict.

Deleted: If a conflict arises between an order or direction of an ICE supervisory officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the ICE Field Office Director in the SAC/Detroit, MI, or designees, and the Butler County Sheriff, or designee, when

## XII. REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

Deleted: the SAC/Detroit, MI

Deleted: The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and

## XIII. LIABILITY AND RESPONSIBILITY

If any participating LEA personnel are the subjects of a complaint of any sort that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall, to the extent allowed by state law, immediately notify ICE of the existence and nature of the complaint. The resolution of the complaint shall also be promptly reported to ICE. Complaints regarding the exercise of immigration enforcement authority by participating LEA personnel shall be handled as described below.

Except as otherwise noted in this MOA or allowed by federal law, the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personnel expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will only be treated as federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function as authorized by this MOA. 8 U.S.C. § 1357(g)(7). It is the understanding of the parties to this MOA that participating LEA personnel will enjoy the same defenses and immunities available to ICE officers from personal liability arising from tort lawsuits based on actions conducted in compliance with this MOA. 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with Brian Moskowitz, the ICE Special Agent in Charge. Requests for representation must be presented to the ICE Office of the Chief Counsel at the 333 Mt. Elliott Street, Detroit, MI. Any request for representation and related correspondence must be clearly marked "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts Staff, Civil Division, Department of Justice. ICE will not be liable for defending or indemnifying acts of intentional misconduct on the part of participating LEA personnel.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with Garrity v. New Jersey, 385 U.S. 493 (1967).

As the activities of participating LEA personnel under this MOA are undertaken under federal authority, the participating LEA personnel will comply with federal standards and guidelines relating to the Supreme Court's decision in Giglio v. United States, 405 U.S. 150 (1972), and its progeny, which relates to the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

**Deleted:** ¶
¶
Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with Brian Moskowitz, the ICE Special Agent in Charge and ▓▓▓▓▓▓▓▓▓ICE Field Office Director in the SAC/Detroit, MI. Requests for representation must be presented to the ICE Office of the Chief Counsel at the 333 Mt Elliott Street, Detroit, MI. Any request for representation and related correspondence must be clearly marked "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts

**Deleted:** As the activities of participating LEA personnel under this MOA are undertaken under federal authority, the participating LEA personnel will comply with federal standards and guidelines

8

## XIV. COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, with regard to activities undertaken under the authority of this MOA, is included at Appendix B.

## XV. CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all federal civil rights statutes and regulations, including the U.S. Department of Justice "Guidance Regarding The Use Of Race By Federal Law Enforcement Agencies" dated June 2003.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVI. STEERING COMMITTEE

Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor, and Richard K. Jones, the Butler County Sheriff, shall establish a steering committee that will meet periodically to review and assess the immigration enforcement activities conducted by the participating LEA personnel and to ensure compliance with the terms of this MOA. The steering committee will meet periodically in Butler County, Ohio at locations to be agreed upon by the parties, or via teleconference. Steering committee participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable, statistical information on increased immigration enforcement activity in Butler County, Ohio. An initial review meeting will be held no later than nine months after certification of the initial class of participating LEA personnel under Section IX, above.

## XVII. COMMUNITY OUTREACH

The LEA may, at its discretion, engage in community outreach with individuals and organizations expressing an interest in this MOA. ICE may participate in any such outreach at its discretion or at the LEA's request.

## XVIII. RELATIONS WITH THE NEWS MEDIA

The LEA may, at its discretion, communicate the substance of this agreement, excluding any criminal or administrative "case specific" information, to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA. This MOA also describes the complaint procedures available to members of the public regarding actions taken by participating LEA personnel pursuant to this agreement.

**Deleted:** ¶
¶

**Deleted:** Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the ICE Field Office Director in the SAC/Detroit, MI and Butler County Sheriff shall establish a steering committee that will meet periodically to review and assess the immigration enforcement activities conducted by the participating LEA personnel and to ensure compliance with the terms of this MOA. The steering committee will meet periodically in Butler County, Ohio at locations to be agreed upon by the parties, or via teleconference. Steering committee participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable, statistical information on

**Deleted:** upon the LEA's

9

The LEA hereby agrees to prior coordination with ICE regarding information to be released to the media regarding actions taken under this MOA. The points of contact for ICE and the LEA for this purpose are identified in Appendix C.

## XIX. MODIFICATION OF THIS MOA

Modifications to this MOA must be proposed in writing and approved by the signatories.

## XX. DURATION AND TERMINATION OF THIS MOA

This MOA will remain in effect from the date of signing until it is terminated by either party. Either party, upon written notice to the other party, may terminate the MOA at any time. A termination notice shall be delivered personally or by certified or registered mail and termination shall take effect immediately upon receipt of such notice.

Either party, upon written or oral notice to the other party, may temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate. Notice of termination or suspension by ICE shall be given to Richard K. Jones, the Butler County Sheriff. Notice of termination or suspension by the LEA shall be given to Brian Moskowitz, the ICE Special Agent in Charge.

> **Deleted:** the SAC/Detroit

Except for the provisions contained in Section XIII, this MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create, any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, and accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: _____     Date: _____

_____     _____
Julie L. Myers
Assistant Secretary
Immigration and Customs Enforcement
Department of Homeland Security

Date: _____

_____

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For the LEA:  Richard K. Jones, Butler County Sheriff

For ICE DRO:  Adrian Macias, Acting Field Office Director, Detroit, Michigan

For ICE OI:  Brian Moskowitz, Special Agent in Charge, Detroit, Michigan.

And

For ICE OI:  Richard Wilkens, Resident Agent in Charge, Cincinnati, Ohio

| Deleted: ¶
¶ |

## COMPLAINT PROCEDURE

This MOA is an agreement between DHS/ICE and the Butler County Sheriff's Office (BCSO), hereinafter referred to as the "Law Enforcement Agency" (LEA), pursuant to which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under Federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

The MOA sets forth the process for designation, training, and certification of certain LEA personnel to perform certain immigration enforcement functions specified herein. Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of the LEA and be handled in accordance with the LEA's Manual of Policy and Procedures, or equivalent rules, regulations or procedures. The LEA will also handle complaints filed against personnel who may exercise immigration authority, but who are not designated and certified under this MOA. The number and type of the latter complaints will be monitored by the Steering Committee established under Section XVI of the MOA.

In order to simplify the process for the public, complaints against participating LEA personnel relating to their immigration enforcement can be reported in a number of ways. The ICE Headquarters Office of Professional Responsibility (OPR) and the LEA's Administrative Investigations Unit will coordinate complaint receipt and investigation.

The ICE OPR will forward complaints to the Department of Homeland Security's Office of Inspector General (DHS OIG) as appropriate for review, and ensure notification as necessary to the U.S. Department of Justice Civil Rights Division (DOJ CRD). The ICE OPR will coordinate complaints related to participating personnel with the LEA's Administrative Investigations Unit as detailed below. Should circumstances warrant investigation of a complaint by the DHS OIG or the DOJ CRD, this will not preclude the DHS OIG, DOJ CRD, or ICE OPR from conducting the investigation in coordination with the LEA's Administrative Investigations Unit, when appropriate.

The ICE OPR will adhere to established procedures relating to reporting and resolving allegations of employee misconduct, and the LEA's Administrative Investigations Unit will follow applicable LEA policies and procedures, personnel rules, state statutes, and collective bargaining agreement requirements.

12

1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures.

Complaints will be accepted from any source (e.g.: ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints can be reported to federal authorities as follows:

1. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington, D.C. at the toll-free number 1-877-246-8253, or

2. Telephonically to the Resident Agent in Charge of the, ICE OPR office in Detroit, MI, at 313-226-4922, or

3. Via mail as follows:

> U.S. Department of Homeland Security
> U.S. Immigration and Customs Enforcement
> Office of Professional Responsibility
> 425 I Street, NW
> Room 3260
> Washington, D.C. 20536

Complaints can also be referred to and accepted by any of the following LEA entities:

1. The LEA's Administrative Investigations Unit

2. The supervisor of any participating LEA personnel; or

LEA's Administrative Investigations Unit as follows:
Captain Katie McMahon – Division Commander – Criminal Investigations Division

2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of the Special Agent in Charge of the ICE Office of Investigations in Detroit, MI. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

13

---

**Margin annotations:**

Formatted: Bullets and Numbering

Deleted: ICE OPR office in Chicago, IL, at 1-847-994-5300, or¶
<#>¶

Deleted: The

Deleted: the SAC/Detroit, MI.

Complaints reported directly to the ICE OPR will be shared with the LEA's Administrative Investigations Unit when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

3. Complaint Resolution Procedures

Upon receipt of any complaint, the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above, the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or the DOJ CRD. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA's Administrative Investigations Unit.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Administrative Investigations Unit for resolution. Richard K. Jones, the Butler County Sheriff will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the requirements of the BCSO Policy shall be honored. If appropriate, an individual may be removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Administrative Investigations Unit to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XVIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:


For the LEA:

Public Affairs Officer Sergeant Monte Mayer
Butler County Sheriff's Office
Public Information Office
705 Hanover Street
Hamilton, Ohio 45011
513-785-1018

| Deleted: Ohio 45011 |


For ICE:

Public Affairs Officer Gregory Palmore
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
477 Michigan Avenue Suite 1850
Detroit, MI. 48226
313-226-0726

| Deleted: ADD LOCATION AND CONTACT INFORMATION |

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Sheriff's Office of Butler County, Ohio (BCSO) hereinafter referred to as the "Law Enforcement AGENCY" (LEA), pursuant to which ICE authorizes up to a maximum of eight (8) nominated, trained, and certified LEA personnel to perform certain immigration enforcement functions as specified herein. It is the intent of the parties that these delegated authorities will enable the LEA to identify and process immigration violators in the Butler County Jail/Correctional facilities. ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter perform certain functions of an immigration officer within the Butler County Jail/Correctional facilities. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken by participating LEA personnel pursuant to this agreement.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), also codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of the Department of Homeland Security, acting through the Assistant Secretary of ICE, to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel are subject to ICE supervision while performing immigration-related duties pursuant to this MOA. For the purposes of this MOA, ICE officers/agents will provide supervision for participating LEA personnel only as to immigration enforcement functions. BCSO retains supervision of all other aspects of the employment of and performance of duties by participating BCSO personnel.

## IV. ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory 4-week training,

1

as described in Section VIII, in the enforcement of federal immigration laws and policies as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. Only participating LEA personnel who are selected, trained, authorized, and supervised, as set out herein, have authority pursuant to this MOA to conduct the immigration officer functions enumerated in this MOA.

Deleted: Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory 4-week training.

Participating LEA personnel performing immigration-related duties pursuant to this MOA will be LEA officers assigned to the Butler County Jail/Correctional facilities.

Deleted: AGENCY JAIL/CORRECTIONAL

Deleted: facilities.

The LEA will immediately contact the ICE RAC Cincinnati or his designee, when matters of investigative interest to ICE should arise in the course of performing duties imparted through the 287(g) authority, including information provided by alien detainees. Matters of ICE interest may include but are not limited to:

1.  The death or serious injury of an alien(s)
2.  Information relating to aliens being smuggled into the United States, victims of human trafficking, or aliens being held hostage.
3.  Significant seizures of cash (over $10,000.00) and any information relating to bulk cash smuggling or money laundering.
4.  Seizures of or information relating to international drug sales or trafficking.
5.  Seizures of or information relating to commercial (inbound or outbound) shipments of merchandise or technology.
6.  Information relating to cyber crime or sex tourism.
7.  Alien related arrests, which could reasonably be expected to generate media interest.
8.  Arrests of aliens from "Special Interest" countries (training in this area will be provided by the ICE RAC Cincinnati or his designee as part of the 287(g) transition).

ICE is aware that several of the aforementioned areas of interest may also potentially include State or local violations, which may make them amenable to prosecution or investigation by the LEA. In these cases, ICE would work jointly with the LEA to provide the best use of Federal, State and local resources for the investigation.

## V. DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel will be authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA and only within the confines of the Butler County Jail/Correctional facilities;

Deleted:

-   The power and authority to interrogate any person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(1)) and to process for immigration violations those individuals who are convicted of State or Federal felony offenses;

-   The power and authority to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2). Notification off such arrest must be made to ICE within twenty-four (24) hours;

2

- The power and authority to serve warrants of arrest for immigration violations pursuant to 8 C.F.R. § 287.5(e)(3);

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)), to complete required criminal alien processing, including fingerprinting, photographing, and interviewing of aliens, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review;

- The power and authority to prepare charging documents (INA Section 239, 8 C.F.R. 239.1; INA Section 238, 8 C.F.R 238.1; INA Section 241(a)(5), 8 C.F.R 241.8; INA Section 235(b)(1), 8 C.F.R. 235.3) including the preparation of a Notice to Appear (NTA) application or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors;

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for processing aliens in categories established by ICE supervisors; and

- The power and authority to detain and transport (8 C.F.R. § 287.5(c)(6)) arrested aliens to ICE-approved detention facilities.

## VI.  DETENTION ISSUES

The LEA is expected to pursue to completion prosecution of the state or local charges that caused the individual to be taken into custody. ICE will assume custody of individuals who have been convicted of a State or local offense only after such individuals have concluded service of any sentence of incarceration.  ICE will also assume custody of aliens with prior criminal convictions and when immigration detention is required by statute.  The ICE Detention and Removal Field Officer Director or his designee will assess on a case-by-case basis the appropriate removal vehicle to be employed and/or whether to assume custody of individuals that do not meet the above criteria based on special interests or other extenuating circumstances after processing by the LEA.  The immigration laws provide ICE Detention and Removal Operations (DRO) with the discretion to manage limited ICE detention resources, and ICE Field Office Directors may exercise this discretion, in appropriate cases, by declining to detain aliens whose detention is not mandated by federal statute.

If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which, the LEA will provide, for a reimbursable fee, detention of incarcerated aliens in LEA facilities, upon the completion of their sentences.  The LEA facility will be expected to meet the ICE detention standards for either a less than 72-hour or over 72-hour facility as determined by ICE, and consistent with the anticipated detention period.

The parties understand that the LEA will not continue to detain an alien after that alien is eligible for release from the LEA's custody in accordance with applicable law and LEA policy, except for a period of up to 48-hours, excluding Saturdays, Sundays, and any holiday, pursuant to an

3

ICE detainer issued in accordance with 8 C.F.R. § 287.7, absent an IGSA in place as described above.

Upon completion of processing and release from the LEA's detention facilities of an individual who participating LEA personnel have determined to be a removable alien, the alien will be transported by the LEA on the same day to an ICE designated office or facility, after notification to and coordination with the ICE supervisory officer, so that no further detention costs will be incurred by ICE.

VII. NOMINATION OF PERSONNEL

The BCSO will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any future expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties, but will be subject to all the requirements of this MOA.

VIII. TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory 4-week training tailored to the immigration functions to be performed. Training will take place at a mutually designated site in Butler County, Ohio and will utilize ICE-designed curriculum and competency testing.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) Civil Rights laws; (vi) the U.S. Department of Justice "Guidance Regarding the Use Of Race By Federal Law Enforcement Agencies," dated June 2003; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligation under federal law and the Vienna Convention on Consular Relations to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XX, below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

IX. CERTIFICATION AND AUTHORIZATION

The ICE Training Division will certify in writing to Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director in Detroit, MI, the names of those LEA personnel who successfully complete training and pass all required testing. Upon

4

receipt of Training Division certification, Brian Moskowitz, the ICE Special Agent in Charge, and Adrian Macias, the Acting ICE Field Office Director or his successor, will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of one year from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer/agent, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Deleted: Name of SAC
Deleted: the
Deleted: Name of FOD
Deleted: JURISDICTION

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time by ICE or the LEA. Such revocation will require immediate notification to the other party to this MOA. Richard K. Jones the Butler County Sheriff and Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor, will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA shall constitute revocation of all immigration enforcement authorizations delegated hereunder.

Deleted: AGENCY DESIGNEE
Deleted: Name of SAC
Deleted: Name of FOD
Deleted: JURISDICTION

## X. COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material.

ICE will provide the instructors and training materials. The LEA is responsible for the salaries and benefits, including overtime, for all of its personnel being trained or performing duties under this MOA, and for those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA candidates' travel, housing, and training and per diem affiliated with the training required for participation in this agreement. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

Deleted:

Deleted: ¶
¶
ICE will provide the instructors and training materials. The LEA is responsible for the salaries and benefits, including overtime, for all of its personnel being trained or performing duties under this MOA, and for those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA candidates' travel, housing, and

If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which LEA will provide, for a reimbursable fee, transportation for all incarcerated aliens in the LEA's facilities, upon the completion of their sentences, to a facility or location designated by ICE. If ICE determines that it is necessary, the LEA will provide ICE, at no cost, an office within each participating LEA facility for ICE supervisory employees to work.

ICE agrees to be responsible for the purchase, installation, and maintenance of technology (computer/IAFIS/Photo and similar hardware/software) necessary to support the investigative functions of participating LEA personnel at each LEA facility with an active 287(g) program. The use of this equipment is to be limited to the performance of responsibilities authorized by this MOA under section 287(g) of the INA by participating LEA personnel. ICE also agrees to provide the necessary technological support and software updates for use by participating LEA personnel to accomplish the delegated functions. Such hardware, software, and other technology purchased or provided by ICE, shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, or when deemed necessary by Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director in Detroit, MI.

Deleted: Name of SAC
Deleted: Name of FOD
Deleted: JURISDICTION

Management and/or supervisory special agents of the ICE RAC, Cincinnati or his designee will supervise immigration enforcement activities conducted by the participating LEA personnel. Participating LEA personnel are not authorized to perform immigration officer functions, except when working under the direct supervision of the ICE RAC, Cincinnati or his designee, or when acting pursuant to the guidance provided by an ICE agent.

Participating LEA personnel shall give timely notice to the ICE RAC, Cincinnati or his designee, within 24 hours of any detainer issued under the authorities set forth in this MOA. The actions of participating LEA personnel will be reviewed by the ICE RAC, Cincinnati or his designee on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual additional training or guidance.

For purposes of this MOA, ICE officers/agents will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE supervisory officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director, his successor, or designees, and Richard K. Jones, the Butler County Sheriff, or designee, when circumstances safely allow the concern to be raised. Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor, and Richard K. Jones, the Butler County Sheriff, shall attempt to resolve the conflict.

## XII. REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to help ICE assess the progress and success of the LEA's 287(g) program.

## XIII. LIABILITY AND RESPONSIBILITY

If any participating LEA personnel are the subjects of a complaint of any sort that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall, to the extent allowed by state law, immediately notify ICE of the existence and nature of the complaint. The resolution of the complaint shall also be promptly be

reported to ICE. Complaints regarding the exercise of immigration enforcement authority by participating LEA personnel shall be handled as described below.

Except as otherwise noted in this MOA or allowed by federal law, the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personnel expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will only be treated as federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function as authorized by this MOA. 8 U.S.C. § 1357(g)(7). It is the understanding of the parties to this MOA that participating LEA personnel will enjoy the same defenses and immunities available to ICE officers from personal liability arising from tort lawsuits based on actions conducted in compliance with this MOA. 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor. Requests for representation must be presented to the ICE Office of the Chief Counsel at 333 Mt. Elliott Street, Detroit, MI. Any request for representation and related correspondence must be clearly marked "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts Staff, Civil Division, Department of Justice. ICE will not be liable for defending or indemnifying acts of intentional misconduct on the part of participating LEA personnel.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with Garrity v. New Jersey, 385 U.S. 493 (1967).

As the activities of participating LEA personnel under this MOA are undertaken under federal authority, the participating LEA personnel will comply with federal standards and guidelines relating to the Supreme Court's decision in Giglio v. United States, 405 U.S. 150 (1972), and its progeny, which relates to the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

## XIV. COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, with regard to activities undertaken under the authority of this MOA, is included at Appendix B.

---

**Deleted:** Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with [redacted], the ICE Special Agent in Charge and [redacted] ICE Field Office Director in JURISDICTION. Requests for representation must be presented to the ICE Office of the Chief Counsel [redacted]. Any request for representation and related correspondence must be clearly marked

**Deleted:** "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to

## XV.  CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all federal civil rights statutes and regulations, including the U.S. Department of Justice "Guidance Regarding The Use Of Race By Federal Law Enforcement Agencies" dated June 2003.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter.  Qualified foreign language interpreters will be provided by the LEA as needed.

## XVI.  STEERING COMMITTEE

Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor and Richard K. Jones, the Butler County Sheriff, shall establish a steering committee that will meet periodically to review and assess the immigration enforcement activities conducted by the participating LEA personnel and to ensure compliance with the terms of this MOA.  The steering committee will meet periodically in Butler County, Ohio, at locations to be agreed upon by the parties, or via teleconference.  Steering committee participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable, statistical information on increased immigration enforcement activity in Butler County, Ohio.  An initial review meeting will be held no later than nine months after certification of the initial class of participating LEA personnel under Section IX, above.

| Deleted: Name of SAC |
| Deleted: Name of FOD |
| Deleted: JURISDICTION |
| Deleted: AGENCY DESIGNEE |
| Deleted: JURISDICTION |

| Deleted: JURISDICTION |

## XVII.  COMMUNITY OUTREACH

The LEA may, at its discretion, engage in community outreach with individuals and organizations expressing an interest in this MOA.  ICE may participate in any such outreach at its discretion or at the LEA's request.

| Deleted: upon the LEA's request |

## XVIII.  RELATIONS WITH THE NEWS MEDIA

The LEA may, at its discretion, communicate the substance of this agreement, excluding any criminal or administrative "case specific" information, to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA.  This MOA also describes the complaint procedures available to members of the public regarding actions taken by participating LEA personnel pursuant to this agreement.

The LEA hereby agrees to prior coordination with ICE regarding information to be released to the media regarding actions taken under this MOA.  The points of contact for ICE and the LEA for this purpose are identified in Appendix C.

## XIX.  MODIFICATION OF THIS MOA

Modifications to this MOA must be proposed in writing and approved by the signatories.

## XX.  DURATION AND TERMINATION OF THIS MOA

This MOA will remain in effect from the date of signing until it is terminated by either party. Either party, upon written notice to the other party, may terminate the MOA at any time. A termination notice shall be delivered personally or by certified or registered mail and termination shall take effect immediately upon receipt of such notice.

Either party, upon written or oral notice to the other party, may temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate. Notice of termination or suspension by ICE shall be given to Richard K. Jones, Butler County Sheriff. Notice of termination or suspension by the LEA shall be given to Brian Moskowitz, the ICE Special Agent in Charge and Adrian Macias, the Acting ICE Field Office Director or his successor.

| Deleted: AGENCY DESIGNEE |
| Deleted: Name of SAC |
| Deleted: Name of FOD |
| Deleted: JURISDICTION |

Except for the provisions contained in Section XIII, this MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create, any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, and accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: _____        Date: _____

_____
Julie L. Myers
Assistant Secretary
Immigration and Customs Enforcement
Department of Homeland Security

Date: _____

_____

# APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For the LEA:   Richard K. Jones, Butler County Sheriff

For ICE DRO:   Adrian Macias, Acting Field Office Director, Detroit, Michigan

For ICE OI:  Brian Moskowitz, Special Agent in Charge, Detroit, Michigan

And

For ICE OI:  Richard Wilkens, Resident Agent in Charge, Cincinnati, Ohio

**Deleted:**

**Deleted: ¶**
¶

# APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between DHS/ICE and the Butler County Sheriff's Office, hereinafter referred to as the "Law Enforcement AGENCY" (LEA), pursuant to which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under Federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

Deleted: AGENCY

The MOA sets forth the process for designation, training, and certification of certain LEA personnel to perform certain immigration enforcement functions specified herein. Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of the LEA and be handled in accordance with the LEA's Manual of Policy and Procedures, or equivalent rules, regulations or procedures. The LEA will also handle complaints filed against personnel who may exercise immigration authority, but who are not designated and certified under this MOA. The number and type of the latter complaints will be monitored by the Steering Committee established under Section XVI of the MOA.

In order to simplify the process for the public, complaints against participating LEA personnel relating to their immigration enforcement can be reported in a number of ways. The ICE Headquarters Office of Professional Responsibility (OPR) and the LEA's Administrative Investigations Unit will coordinate complaint receipt and investigation.

The ICE OPR will forward complaints to the Department of Homeland Security's Office of Inspector General (DHS OIG) as appropriate for review, and ensure notification as necessary to the U.S. Department of Justice Civil Rights Division (DOJ CRD). The ICE OPR will coordinate complaints related to participating personnel with the LEA's Administrative Investigations Unit as detailed below. Should circumstances warrant investigation of a complaint by the DHS OIG or the DOJ CRD, this will not preclude the DHS OIG, DOJ CRD, or ICE OPR from conducting the investigation in coordination with the LEA's Administrative Investigations Unit, when appropriate.

The ICE OPR will adhere to established procedures relating to reporting and resolving allegations of employee misconduct, and the LEA's Administrative Investigations Unit will follow applicable LEA policies and procedures, personnel rules, state statutes, and collective bargaining agreement requirements.

1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures.

Complaints will be accepted from any source (e.g.: ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints can be reported to federal authorities as follows:

1. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington, D.C. at the toll-free number 1-877-246-8253, or

2. Telephonically to the Resident Agent in Charge of the ICE OPR office in Detroit, MI, at 313-226-4922, or

<div style="float:right; border:1px solid; padding:2px;">Deleted: ICE OPR office in ICE OPR Office Covering Jurisdiction</div>

3. Via mail as follows:

> U.S. Department of Homeland Security
> U.S. Immigration and Customs Enforcement
> Office of Professional Responsibility
> 425 I Street, NW
> Room 3260
> Washington, D.C. 20536

Complaints can also be referred to and accepted by any of the following LEA entities:

1. The LEA's Administrative Investigations Unit

2. The supervisor of any participating LEA personnel; or

LEA's Administrative Investigations Unit as follows:
Captain Katie McMahon – Division Commander – Criminal Investigations Division.

<div style="float:right; border:1px solid; padding:2px;">Deleted: INSERT CONTACT TITLE, NAME, ADDRESS AND INFORMATION</div>

2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of the Special Agent in Charge of the ICE Office of Investigations in Detroit, MI. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

<div style="float:right; border:1px solid; padding:2px;">Deleted: JURISDICTION</div>

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Administrative Investigations Unit when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

Deleted: ¶

3. Complaint Resolution Procedures

Upon receipt of any complaint, the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above, the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or the DOJ CRD. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA's Administrative Investigations Unit.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Administrative Investigations Unit for resolution. Richard K. Jones, the Butler County Sheriff will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

Deleted: T

Deleted: facility commander

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the requirements of the BCSO policy shall be honored. If appropriate, an individual may be removed from participation in the activities covered under the MOA pending resolution of an inquiry.

Deleted: AGENCY POLICY

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Administrative Investigations Unit to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

13

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XVIII of the MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

For the LEA:

Public Affairs Officer Sergeant Monte Mayer
Butler County Sheriff's Office
Public Information Office
705 Hanover Street
Hamilton, Ohio 45011
513-785-1018

Deleted: ¶
¶

For ICE:

Public Affairs Officer Gregory Palmore
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
477 Michigan Avenue Suite 1850
Detroit, MI. 48226
313-226-0726

Deleted: ADD NAME

Deleted: ADD LOCATION AND CONTACT INFORMATION

14