# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Butler County Sheriff's Office, hereinafter referred to as the "Law Enforcement Agency" (LEA), pursuant to which ICE authorizes up to a maximum of ten (10) nominated, trained, and certified LEA personnel to perform certain immigration enforcement functions as specified herein. Two (2) LEA personnel will be designated as Task Force Officers (TFO) and eight (8) LEA personnel will be designated as Jail Enforcement Officers (JEO). It is the intent of the parties that these delegated authorities will enable the LEA to identify and process immigration violators and conduct criminal investigations under the direct supervision of ICE in the State of Ohio. ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter perform certain functions of an immigration officer within the State of Ohio. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken by participating LEA personnel pursuant to this agreement.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), also codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of the Department of Homeland Security, acting through the Assistant Secretary of ICE, to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel are subject to ICE supervision while performing immigration-related duties pursuant to this MOA. For the purposes of this MOA, ICE officers will provide supervision for participating LEA personnel only as to immigration enforcement and/or immigration investigative functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

990009

## IV. ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory four (4) week training, as described in Section VIII, in the enforcement of federal immigration laws and policies as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. Only participating LEA personnel who are selected, trained, authorized, and supervised, as set out herein, have authority pursuant to this MOA to conduct the immigration officer functions enumerated in this MOA. Participating LEA personnel performing immigration-related duties pursuant to this MOA will be:

1. LEA officers assigned to the Butler County Jail/Correctional facilities; and/or

2. LEA officers who are currently Peace Officers in the State of Ohio and in the case of TFO's have at least two (2) years of Detective experience with the LEA and comply with the following conditions:

   a. Assigned full-time to the ICE Resident Agent in Charge (RAC) Cincinnati at a location(s) to be designated by ICE.
   b. Immigration-related duties will be authorized solely within an ICE led criminal investigative Task Force.
   c. Immigration-related duties will be exercised during the course of Task Force investigations at the direction of the RAC Cincinnati or his/her designee.
   d. No independent immigration related enforcement activity and/or criminal investigation will be conducted by the LEA unless authorized by the RAC Cincinnati or his/her designee.
   e. Personnel may be assigned and/or co-located as Task Force officers to assist ICE with criminal investigations deemed appropriate by ICE; however, efforts will be made to focus on violations with a nexus to Butler County, Ohio.

The LEA officers will immediately contact the RAC office in Cincinnati when matters of investigative interest to ICE should arise in the course of performing immigration-related duties pursuant to this MOA, including information provided by alien detainees. Matters of ICE interest may include but are not limited to:

1. The death or serious injury of an alien(s)
2. Information relating to aliens being smuggled into the United States, victims of human trafficking, or aliens being held hostage.
3. Significant seizures of cash (over $10,000.00) and any information relating to bulk cash smuggling or money laundering.
4. Seizures of or information relating to international drugs sales or trafficking.
5. Seizures of or information relating to commercial (inbound or outbound) shipments of merchandise or technology.
6. Alien related arrests, which could reasonably be expected to generate media interest.
7. Arrest of aliens from "special interest" countries.

990010

8.  Information relating to individuals and organizations engaged in the sale, distribution, transfer, possession and/or production of fraudulent identity documents being utilized in furtherance of undocumented aliens avoiding detection and/or removal from the United States.

9.  Information relating to individuals and organizations involved in various forms of Immigration Fraud including but not limited to, Marriage Fraud, Visa Fraud, Asylum Fraud and Immigration Benefit Fraud.

## V. DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel will be authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(1)) and to process for immigration violations those individuals who are convicted of State or Federal felony offenses;

- The power to arrest without warrant any alien entering or attempting to unlawfully enter the United States, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1).

- The power and authority to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if there is reason to believe that the person so arrested has committed such felony and if there is likelihood of the person escaping before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2). Notification of such arrest must be made to ICE within twenty-four (24) hours;

- The power and authority to serve warrants of arrest for immigration violations pursuant to 8 C.F.R. § 287.5(e)(3);

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)), to complete required criminal alien processing, including fingerprinting, photographing, and interviewing of aliens, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review;

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(1), 8 C.F.R. § 235.3) including the preparation of a Notice to Appear (NTA) application or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors;

990011

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for processing aliens in categories established by ICE supervisors; and

- The power and authority to detain and transport (8 C.F.R. § 287.5(c)(6)) arrested aliens to ICE-approved detention facilities.

## VI. DETENTION AND TRANSPORTATION ISSUES

The LEA is expected to pursue to completion prosecution of the state or local charges that caused the individual to be taken into custody. ICE will assume custody of individuals who have been convicted of a State or local offense only after such individuals have concluded service of any sentence of incarceration. ICE will also assume custody of aliens with prior criminal convictions and when immigration detention is required by statute. The ICE Detention and Removal Field Office Director or his/her designee will assess on a case-by-case basis the appropriate removal vehicle to be employed and/or whether to assume custody of individuals that do not meet the above criteria based on special interests or other extenuating circumstances after processing by the LEA. The immigration laws provide ICE Detention and Removal Operations (DRO) with the discretion to manage limited ICE detention resources, and ICE Field Office Directors may exercise this discretion, in appropriate cases, by declining to detain aliens whose detention is not mandated by federal statute.

If ICE determines that it is necessary, the LEA will enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which, the LEA will provide, for a reimbursable fee, detention of incarcerated aliens in LEA facilities, upon the completion of their sentences. The LEA facility will be expected to meet the ICE detention standards for either a less than 72-hour or over 72-hour facility as determined by ICE, and consistent with the anticipated detention period.

In addition, if ICE determines that it is necessary, the LEA will enter into an IGSA with ICE for transportation of all incarcerated aliens. Pursuant to this transportation IGSA, for a reimbursable fee, the LEA will transport all incarcerated aliens in its facilities, upon completion of their sentences, to a facility or location designated by ICE.

If ICE determines that it is necessary, the LEA will provide ICE, at no cost, with an office within each participating LEA facility for ICE supervisory employees to work.

The parties understand that the LEA will not continue to detain an alien after that alien is eligible for release from the LEA's custody in accordance with applicable law and LEA policy, except for a period of up to 48-hours, excluding Saturdays, Sundays, and any holiday, pursuant to an ICE detainer issued in accordance with 8 C.F.R. § 287.7, absent an IGSA in place as described above.

990012

Upon completion of processing and release from the LEA's detention facilities of an individual who participating LEA personnel have determined to be a removable alien, the alien will be transported by the LEA on the same day to an ICE designated office or facility, after notification to and coordination with the ICE supervisory officer, so that no further detention costs will be incurred by ICE.

## VII. NOMINATION OF PERSONNEL

The LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check to include but not be limited to submission of fingerprints and a personal history questionnaire to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two (2) years of LEA work experience and in the case of TFO's at least two years of Detective experience within the LEA, and hold Peace Officer status in the State of Ohio. All candidates must be approved by ICE and must be found eligible for access to sensitive information.

The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The LEA agrees to use due diligence to screen individuals nominated for training and agree that individuals who successfully complete the training under this MOA will perform immigration officer functions authorized under 287(g) for a minimum of two (2) years. Any failure by the LEA to fulfill this commitment could jeopardize the terms of this MOA and ICE reserves the right to terminate this MOA, suspend participation in the 287(g) training program, or take other appropriate action as necessary.

Candidates working with jail populations shall have specific experience that should consist of having supervised inmates. Candidates must show that they have been trained on, and concerned with, maintaining the security of the facility. Candidates must have enforced rules and regulations governing the facility on inmate accountability and conduct. Candidates must also show an ability to meet and deal with people of differing backgrounds and behavioral patterns.

Candidates working with Task Force operations shall have knowledge of, and have enforced, laws and regulations pertinent to their law enforcement activities and their jurisdictions. The applicant's work experience should consist of interviewing witnesses, interrogating subjects, providing constitutional rights warnings, obtaining statements and executing search and seizure warrants. An emphasis should be placed on officers who have planned, organized and conducted complex investigations relating to violations of criminal and civil law. All task force officers must be sworn/certified officers, must possess arrest authority, and must be authorized to carry firearms.

All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances. Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any future expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties, but will be subject to all the requirements of this MOA.

990013

## VIII.  TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory 4-week training tailored to the immigration functions to be performed.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) Civil Rights laws; (vi) the U.S. Department of Justice "Guidance Regarding the Use Of Race By Federal Law Enforcement Agencies," dated June 2003; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligation under federal law and the Vienna Convention on Consular Relations to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XX, below.  Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.  CERTIFICATION AND AUTHORIZATION

The ICE Training Division will certify in writing to the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan the names of those LEA personnel who successfully complete training and pass all required testing.  Upon receipt of Training Division certification, the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of one year from the date of the authorization.  ICE will also provide a copy of the authorization to the LEA.  The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time by ICE or the LEA.  Such revocation will require immediate notification to the other party to this MOA.  The LEA point of contact (POC) and the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan will be responsible for notification of the appropriate personnel in their respective agencies.  The termination of this MOA shall constitute revocation of all immigration enforcement authorizations delegated hereunder.

## X.  COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material.

990014

ICE will provide the instructors and training materials. The LEA is responsible for the salaries and benefits, including overtime, for all of its personnel being trained or performing duties under this MOA, and for those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA candidates' travel, housing, and per diem affiliated with the training required for participation in this agreement. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

If ICE determines the training provides a direct service for the Government, and it is in the best interest of the Government, the Government may issue travel orders to selected candidates and reimburse travel and per diem expenses only. The LEA remains responsible for paying salaries and benefits of the selected candidates.

Subject to the availability of funds, ICE agrees to be responsible for the purchase, installation, and maintenance of technology (computer/IAFIS/Photo and similar hardware/software) necessary to support the investigative functions of participating LEA personnel at each LEA facility with an active 287(g) program. The use of this equipment is to be limited to the performance of responsibilities authorized by this MOA under section 287(g) of the INA by participating LEA personnel. ICE also agrees to provide the necessary technological support and software updates for use by participating LEA personnel to accomplish the delegated functions. Such hardware, software, and other technology purchased or provided by ICE, shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, or when deemed necessary by the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan.

The LEA is responsible to provide all administrative supplies, i.e. paper, toner, pens, pencils and other similar items necessary for normal office operations. The LEA is also responsible to provide the necessary security equipment, i.e. handcuffs, leg restraints and flexi cuffs etc.

## XI. ICE SUPERVISION

Immigration enforcement activities conducted by the participating LEA personnel will be supervised and directed by ICE supervisory officers or the designated team leader. Jail Enforcement Officers (JEO) will be supervised by ICE Detention and Removal Operations (DRO) and Task Force Officers (TFO) will be supervised by ICE Office of Investigations (OI) or as otherwise delegated by ICE supervisory personnel. Participating LEA personnel are not authorized to perform immigration officer functions, except when working under the supervision of an ICE officer, or when acting pursuant to the guidance provided by an ICE agent. Participating LEA personnel shall give timely notice to the ICE supervisory officer within 24 hours of any detainer issued under the authorities set forth in this MOA. The actions of participating LEA personnel will be reviewed by ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual additional training or guidance.

990015

For purposes of this MOA, ICE officers will supervise participating LEA personnel only as to immigration enforcement functions and in the case of TFOs, for investigations conducted in conjunction to this authority. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE supervisory officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan, or his/her designees, and the LEA, or his/her designee, when circumstances safely allow the concern to be raised. The ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan and the LEA POC shall attempt to resolve the conflict.

## XII. REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to help ICE assess the progress and success of the LEA's 287(g) program.

## XIII. LIABILITY AND RESPONSIBILITY

If any participating LEA personnel are the subjects of a complaint of any sort that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall, to the extent allowed by state law, immediately notify ICE of the existence and nature of the complaint. The resolution of the complaint shall also be promptly reported to ICE. Complaints regarding the exercise of immigration enforcement authority by participating LEA personnel shall be handled as described below.

Except as otherwise noted in this MOA or allowed by federal law, the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

990016

Participating LEA personnel will only be treated as federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function as authorized by this MOA. 8 U.S.C. § 1357(g)(7). It is the understanding of the parties to this MOA that participating LEA personnel will enjoy the same defenses and immunities available to ICE officers from personal liability arising from tort lawsuits based on actions conducted in compliance with this MOA. 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan. Requests for representation must be presented to the ICE Office of the Chief Counsel at 333 Mt. Elliott Street, Detroit, Michigan. Any request for representation and related correspondence must be clearly marked "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts Staff, Civil Division, Department of Justice. ICE will not be liable for defending or indemnifying acts of intentional misconduct on the part of participating LEA personnel.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967).

As the activities of participating LEA personnel under this MOA are undertaken under federal authority, the participating LEA personnel will comply with federal standards and guidelines relating to the Supreme Court's decision in <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and its progeny, which relates to the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

## XIV. COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, with regard to activities undertaken under the authority of this MOA, is included at Appendix B.

## XV. CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all federal civil rights statutes and regulations, including the U.S. Department of Justice "Guidance Regarding the Use of Race by Federal Law Enforcement Agencies" dated June 2003.

990017

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVI. STEERING COMMITTEE

The ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan and the LEA POC shall establish a steering committee that will meet periodically to review and assess the immigration enforcement activities conducted by the participating LEA personnel and to ensure compliance with the terms of this MOA. The steering committee will meet periodically in the State of Ohio at locations to be agreed upon by the parties, or via teleconference. Steering committee participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable, statistical information on increased immigration enforcement activity in Butler County. An initial review meeting will be held no later than nine months after certification of the initial class of participating LEA personnel under Section IX, above.

## XVII. COMMUNITY OUTREACH

The LEA may, at its discretion, engage in community outreach with individuals and organizations expressing an interest in this MOA. ICE may participate in such outreach upon the LEA's request.

## XVIII. RELATIONS WITH THE NEWS MEDIA

The LEA may, at its discretion, communicate the substance of this agreement to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA. This MOA also describes the complaint procedures available to members of the public regarding actions taken by participating LEA personnel pursuant to this agreement.

The LEA hereby agrees to coordinate with ICE regarding information to be released to the media regarding actions taken under this MOA. All contact with the media involving investigations conducted under this MOA by TFOs will be done pursuant to ICE policy. The points of contact for ICE and the LEA for this purpose are identified in Appendix C.

## XIX. MODIFICATION OF THIS MOA

Modifications to this MOA must be proposed in writing and approved by the signatories.

## XX. DURATION AND TERMINATION OF THIS MOA

This MOA will remain in effect from the date of signing until it is terminated by either party. Either party, upon written notice to the other party, may terminate the MOA at any time. A termination notice shall be delivered personally or by certified or registered mail and termination shall take effect immediately upon receipt of such notice.

990018

**10**

Either party, upon written or oral notice to the other party, may temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate. Notice of termination or suspension by ICE shall be given to the LEA POC. Notice of termination or suspension by the LEA shall be given to the ICE Special Agent in Charge and/or the ICE Field Office Director in Detroit, Michigan.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create, any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, and accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: 2/1/08

Julie L. Myers
Assistant Secretary
Immigration and Customs Enforcement
Office of Homeland Security

Date: 02.05.08

Richard K. Jones
Butler County Sheriff
Hamilton, Ohio

990019

**11**

# APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For the LEA:              Richard K. Jones
Butler County Sheriff
705 Hanover Street
Hamilton, Ohio 45011
(513) 785-1000

For ICE DRO:        Vincent Clausen
Field Office Director
333 Mt. Elliott Street
Detroit, Michigan 48207
(313) 446-4514

For ICE OI:           Brian Moskowitz
Special Agent in Charge
477 Michigan Avenue, Suite 1850
Detroit, Michigan 48226
(313) 226-0500

Richard Wilkens
Resident Agent in Charge
550 Main Street, Room 4001
Cincinnati, OH 45202
(513) 684-2413

990020

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between DHS/ICE and the Butler County Sheriff's Office (BCSO), hereinafter referred to as the "Law Enforcement Agency" (LEA), pursuant to which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under Federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

The MOA sets forth the process for designation, training, and certification of certain LEA personnel to perform certain immigration enforcement functions specified herein. Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of the LEA and be handled in accordance with the LEA's Manual of Policy and Procedures, or equivalent rules, regulations or procedures. The LEA will also handle complaints filed against personnel who may exercise immigration authority, but who are not designated and certified under this MOA. The number and type of the latter complaints will be monitored by the Steering Committee established under Section XVI of the MOA.

In order to simplify the process for the public, complaints against participating LEA personnel relating to their immigration enforcement can be reported in a number of ways. The ICE Headquarters Office of Professional Responsibility (OPR) and the LEA's Administrative Investigations Unit will coordinate complaint receipt and investigation.

The ICE OPR will forward complaints to the Department of Homeland Security's Office of Inspector General (DHS OIG) as appropriate for review, and ensure notification as necessary to the U.S. Department of Justice Civil Rights Division (DOJ CRD). The ICE OPR will coordinate complaints related to participating personnel with the LEA's Administrative Investigations Unit as detailed below. Should circumstances warrant investigation of a complaint by the DHS OIG or the DOJ CRD, this will not preclude the DHS OIG, DOJ CRD, or ICE OPR from conducting the investigation in coordination with the LEA's Administrative Investigations Unit, when appropriate.

The ICE OPR will adhere to established procedures relating to reporting and resolving allegations of employee misconduct, and the LEA's Administrative Investigations Unit will follow applicable LEA policies and procedures, personnel rules, state statutes, and collective bargaining agreement requirements.

990021

1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures.

Complaints will be accepted from any source (e.g.: ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints can be reported to federal authorities as follows:

1. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington, D.C. at the toll-free number 1-877-246-8253, or

2. Telephonically to the OPR Duty Agent at 313-226-4922, or

3. Via mail as follows:

> U.S. Department of Homeland Security
> U.S. Immigration and Customs Enforcement
> Office of Professional Responsibility
> 425 I Street, NW
> Room 3260
> Washington, D.C. 20536

Complaints can also be referred to and accepted by any of the following LEA entities:

1. The LEA's Professional Standards Section

2. The supervisor of any participating LEA personnel; or

> Captain Katie McMahon
> Division Commander
> Criminal Investigations Division
> 705 Hanover Street
> Hamilton, Ohio 45011
> (513) 785-1000

990022

2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of the Special Agent in Charge of the ICE Office of Investigations in the State of Michigan. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Administrative Investigations Unit when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

3. Complaint Resolution Procedures

Upon receipt of any complaint, the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above, the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or the DOJ CRD. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA's Professional Standards Section.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Professional Standards Section for resolution. The Professional Standards commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the requirements of the LEA policy shall be honored. If appropriate, an individual may be removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

990023

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Administrative Investigations Unit to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

990024

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XVIII of the MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

For LEA:

Sergeant Monte Mayer
Public Affairs Officer
Butler County Sheriff's Office
Public Information Office
705 Hanover Street
Hamilton, Ohio 45011
(513) 785-1018

For ICE:

Gregory Palmore
Public Affairs Officer
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
477 Michigan Avenue, Suite 1850
Detroit, Michigan 48226
(313) 226-0726

990025