September 6, 2007

The Honorable Robin N. Piper
Butler County Prosecuting Attorney
Government Services Center, 11th Floor
P.O. Box 515
315 High Street
Hamilton, Ohio 45012-0515

SYLLABUS: 2007-029

1. For the purpose of carrying out his duties under R.C. 311.07 and R.C. 311.08, a county sheriff may enter into a written agreement with the United States Immigration and Customs Enforcement Office or the United States Department of Homeland Security under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the criminal provisions of federal immigration law.

2. Under Ohio law, a county sheriff may not enter into a written agreement with the United States Immigration and Customs Enforcement Office or the United States Department of Homeland Security under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the civil provisions of federal immigration law.



STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL

MARC DANN, ATTORNEY GENERAL

Opinions Section
30 E. Broad St., 15th Floor
Columbus, OH 43215-3400
Telephone: (614) 752-6417
Facsimile: (614) 466-0013
www.ag.state.oh.us

September 6, 2007

OPINION NO. 2007-029

The Honorable Robin N. Piper
Butler County Prosecuting Attorney
Government Services Center, 11th Floor
P.O. Box 515
315 High Street
Hamilton, Ohio 45012-0515

Dear Prosecutor Piper:

You have requested an opinion concerning the authority of a county sheriff to enter into a written agreement with federal officials to enforce the criminal and civil provisions of federal immigration law. Specifically, you ask the following question:

> Does R.C. 311.07 or R.C. 311.08 authorize a county sheriff to enter into a written agreement with the United States Immigration and Customs Enforcement Office or the United States Department of Homeland Security under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens?

For the reasons that follow, we conclude that, for the purpose of carrying out his duties under R.C. 311.07 and R.C. 311.08, a county sheriff may enter into a written agreement with the United States Immigration and Customs Enforcement Office (USICEO) or the United States Department of Homeland Security (USDHS) under 8 U.S.C. § 1357(g) with regard to the enforcement of the criminal provisions of federal immigration law. We conclude, further, that, under Ohio law, a county sheriff may not enter into such a written agreement with regard to the enforcement of the civil provisions of federal immigration law.

**Federal Immigration Law**

The United States Congress holds a plenary and exclusive power to control and regulate immigration. *See generally* U.S. Const. art. I, § 8, cl. 4 (the United States Congress may "establish an uniform Rule of Naturalization"); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976) ("the authority to control immigration is ... vested solely in the Federal Government,

rather than the States"); *De Canas v. Bica,* 424 U.S. 351, 354 (1976) (the "[p]ower to regulate immigration is unquestionably exclusively a federal power"). The United States Congress has exercised this power by enacting 8 U.S.C. §§ 1101, *et seq.*, which are referred to as the Immigration and Nationality Act. *See generally Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 419 (1948) (8 U.S.C. §§ 1101, *et seq.* establishes "a comprehensive legislative plan for the nation-wide control and regulation of immigration and naturalization").

Federal law sets forth detailed procedures for granting immigrant status, admission qualifications for aliens,[1] procedures for detaining, deporting, and removing aliens, and the manner in which aliens may become naturalized citizens of the United States. The United States Congress has also empowered the Attorney General of the United States to enforce the criminal and civil provisions of federal immigration law. *See, e.g.,* 8 U.S.C. § 1103; 8 U.S.C. § 1226; 8 U.S.C. § 1231; 8 U.S.C. § 1357.

In order to enforce these provisions of federal immigration law, the Attorney General of the United States may cooperate with, or enlist the aid of, state and local law enforcement officials in various ways. *See, e.g.,* 8 U.S.C. § 1103(a)(10); 8 U.S.C. § 1252c; 8 U.S.C. § 1324(c); 8 U.S.C. § 1357(g); 28 C.F.R. § 65.83; 28 C.F.R. § 65.84. One method used by the Attorney General of the United States authorizes state and local officials to enter into written agreements with the Attorney General of the United States whereby state and local law enforcement officers are empowered to perform a function[2] of an immigration officer in relation

---

[1] For purposes of federal immigration law, an "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

[2] Functions of an immigration officer that relate to the investigation, apprehension, and detention of aliens in the United States include, but are not limited to, the following:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
> (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;
> . . .;

to the investigation, apprehension, or detention of aliens who violate a criminal or civil provision of federal immigration law:

> (1) Notwithstanding section 1342 of title 31, United States Code, the Attorney General[3] may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and *to the extent consistent with State and local law.*
>
> ....
>
> (4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States; and
>
> (5) to make arrests—
>
> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
>
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such felony,
>
> if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a).

---

[3] We are unable to advise you whether the United States Immigration and Customs Enforcement Office (USICEO) or the United States Department of Homeland Security (USDHS) may exercise the authority granted to the Attorney General of the United States under 8 U.S.C. § 1357(g). *See generally* 1999 Op. Att'y Gen. No. 99-007 at 2-55 (the Ohio Attorney General's office "is not empowered to render authoritative interpretations of federal law"). It is, therefore, assumed, for the purpose of this opinion, that the officials at USICEO and USDHS have this authority.

>       (5)     With respect to each officer or employee of a State or political
> subdivision who is authorized to perform a function under this subsection, the
> specific powers and duties that may be, or are required to be, exercised or
> performed by the individual, the duration of the authority of the individual, and
> the position of the agency of the Attorney General who is required to supervise
> and direct the individual, shall be set forth in a written agreement between the
> Attorney General and the State or political subdivision. (Footnote and emphasis
> added.)

8 U.S.C. § 1357(g).

8 U.S.C. § 1357(g) thus authorizes a written agreement between a county sheriff and USICEO or USDHS whereby deputy sheriffs may perform a function of an immigration officer in relation to the enforcement of the criminal and civil provisions of federal immigration law, provided such an agreement is consistent with state law.

**Powers and Duties of a County Sheriff under Ohio Law**

Let us now turn to your specific question, which asks whether R.C. 311.07 or R.C. 311.08 authorizes a county sheriff to enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens who violate a criminal or civil provision of federal immigration law. It is well established that a county sheriff, as a creature of statute, *see* R.C. 311.01, has only those powers expressly provided by statute or as may exist by necessary implication. *United States v. Laub Baking Co.*, 283 F. Supp. 217, 220 (N.D. Ohio 1968); 1987 Op. Att'y Gen. No. 87-099 at 2-657. In accordance with this principle, a county sheriff may not enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) to enforce the criminal and civil provisions of federal immigration law unless R.C. 311.07, R.C. 311.08, or another provision of state law expressly or impliedly authorizes the county sheriff to do so.[4]

---

[4]     You explain in your letter that R.C. 9.63(A) requires a county sheriff to comply with any lawful request for assistance made by USICEO or USDHS while carrying out a federal immigration investigation:

> Notwithstanding any law, ordinance, or collective bargaining contract to
> the contrary, no state or local employee shall unreasonably fail to comply with
> any lawful request for assistance made by any federal authorities carrying out the
> provisions of the USA Patriot Act, any federal immigration or terrorism
> investigation, or any executive order of the president of the United States
> pertaining to homeland security, to the extent that the request is consistent with
> the doctrine of federalism.

No language in R.C. 311.07 or R.C. 311.08 expressly authorizes a county sheriff to enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens who violate a criminal or civil provision of federal immigration law. *Cf.* R.C. 311.29(A) (a county sheriff may enter into contracts with political subdivisions, authorities, or counties of this state "pursuant to which the sheriff undertakes and is authorized by the contracting subdivision, authority, or county to perform any police function, exercise any police power, or render any police service in behalf of the contracting subdivision, authority, or county, or its legislative authority, that the subdivision, authority, or county, or its legislative authority, may perform, exercise, or render"). A county sheriff does, however, have explicit authority to preserve the public peace within the county.

R.C. 311.07, which sets forth the general powers and duties of a county sheriff, provides, in relevant part:

> Each sheriff shall preserve the public peace and cause all persons guilty of any breach of the peace, within the sheriff's knowledge or view, to enter into recognizance with sureties to keep the peace and to appear at the succeeding term of the court of common pleas, and the sheriff shall commit such persons to jail in case they refuse to do so.... In the execution of official duties of the sheriff, the sheriff may call to the sheriff's aid such persons or power of the county as is necessary.

R.C. 311.07(A).

R.C. 311.08(A) declares, further, that a county sheriff is required to "exercise the powers conferred and perform the duties enjoined upon him by statute and by the common law." As explained by the Ohio Supreme Court, the common law requires a county sheriff "[t]o preserve the peace in his bailiwick or county. To this end he is the first man within the county, and it is

---

Although the language of R.C. 9.63(A) authorizes state and local officials to comply with a lawful request for assistance made by USICEO or USDHS while carrying out a federal immigration investigation, it does not appear that this language is intended to authorize state or local officials to enter into written agreements with federal authorities to enforce the criminal and civil provisions of federal immigration law. Instead, the purpose of R.C. 9.63(A) is limited to establishing a state-wide policy that, *inter alia,* requires state and local officials to cooperate with federal immigration officials who request assistance during a federal immigration investigation. *See generally* Ohio Legislative Service Comm'n, 126-SB9 LSC Analysis, at 19 (final analysis) (indicating that the General Assembly enacted R.C. 9.63(A) to compel "government employee cooperation" with federal authorities during a federal immigration investigation). We, therefore, do not believe that R.C. 9.63(A) authorizes a county sheriff to enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) whereby deputy sheriffs are generally authorized to enforce the criminal and civil provisions of federal immigration law.

incident to his office that he apprehend and commit to prison all persons who break or attempt to break the peace." *State ex rel. McLain,* 58 Ohio St. 313, 320, 50 N.E. 907 (1898); *accord United States v. Laub Baking Co.,* 283 F. Supp. at 220. Therefore, under R.C. 311.07(A) and R.C. 311.08(A), a county sheriff "has the general duty to preserve the public peace and may call to his aid such power of the county as is necessary to carry out his duty to preserve the public peace." 1986 Op. Att'y Gen. No. 86-023 at 2-120.

### Authority of a County Sheriff to Enforce the Criminal Provisions of Federal Immigration Law Pursuant to a Written Agreement with USICEO or USDHS

When examining a county sheriff's authority to preserve the public peace in relation to federal immigration law it is crucial to distinguish between civil and criminal violations of federal immigration law. The United States Congress has provided different procedures by which the criminal and civil provisions of federal immigration law are to be enforced. 2007 Op. Att'y Gen. No. 2007-018, slip op. at 1 n.1. In particular, civil violations are processed administratively, *see, e.g.,* 8 U.S.C. § 1227; 8 U.S.C. § 1253(c); 8 U.S.C. § 1324d, while criminal violations are prosecuted in federal courts, *see, e.g.,* 8 U.S.C. § 1253(a), (b); 8 U.S.C. § 1324; 8 U.S.C. § 1325(a), (c); 8 U.S.C. § 1326. 2007 Op. Att'y Gen. No. 2007-018, slip op. at 1 n.1. We will, therefore, first consider whether a county sheriff's authority to preserve the public peace includes the power to enforce the criminal provisions of federal immigration law pursuant to a written agreement with USICEO or USDHS, then whether this authority includes the power to enforce the civil provisions of federal immigration law pursuant to a written agreement with USICEO or USDHS.

As stated in 2007 Op. Att'y Gen. No. 2007-018, slip op. at 5-6, a county sheriff's duty to preserve the public peace includes the concomitant authority to arrest and detain aliens who violate a criminal provision of federal immigration law:

> The term "peace" is not defined for purposes of R.C. 311.07 or R.C. 311.08. This term, therefore, is accorded its common, ordinary meaning. R.C. 1.42. *Black's Law Dictionary* 1166 (8th ed. 2004) defines "peace" as "[a] state of public tranquility; freedom from civil disturbance or hostility." *Accord City of Wellsville v. O'Connor,* 1 Ohio C.C. (n.s.) 253, 256, 14 Ohio Cir. Dec. 689 (Cir. Ct. Columbiana County 1903). Moreover, the Ohio Supreme Court has held that the General Assembly deems the commission of a criminal offense a breach of the peace inasmuch as a violation of the criminal laws disturbs the tranquility and dignity of the state. As explained in *City of Akron v. Mingo,* 169 Ohio St. 511, 515-16, 160 N.E.2d 225 (1959), which interpreted the exceptions to immunity from arrest conferred under R.C. 2331.11-.14:
>
>> The statute itself (Section 2331.13) limits the immunity so that it shall "not extend to cases of treason, felony, or breach of the peace." What then is meant by breach of the peace? Does it include all criminal offenses?

> It is quite pertinent that the statutes of Ohio, in Section 2941.06, Revised Code, provide the form to be used for either indictment or information, which would include all felonies and misdemeanors presented by a grand jury, and contain the words, "contrary to the form of the statute in such case made and provided, and against the *peace and dignity* of the state of Ohio."
>
> *It is obvious that, by adoption of this form, the General Assembly considered all criminal offenses to be against the peace and dignity of the state of Ohio or a breach of the peace.* (…[E]mphasis added [and footnote omitted].)

*See generally Williamson v. United States*, 207 U.S. 425 (1908) (the phrase "breach of the peace" includes all crimes and misdemeanors of every character).

Insofar as the language of R.C. 2941.06 is substantially the same as when the Ohio Supreme Court decided *Mingo*,[5] the court's reasoning remains persuasive. Accordingly, a county sheriff's duty to preserve the public peace includes the concomitant authority to arrest and detain without a warrant any person who commits a criminal offense.

An alien who violates certain provisions of federal immigration law may be subject to criminal prosecution. For example, under 8 U.S.C. § 1304(e), failure to carry a certificate of alien registration or alien registration receipt card may subject an alien to criminal sanctions. 8 U.S.C. § 1306 also authorizes criminal penalties for aliens who fail to register and be fingerprinted, notify the Attorney General of a change in address, make fraudulent statements on an application for registration, or counterfeit any information contained on a certificate of alien registration or alien registration receipt card. In addition, 8 U.S.C. § 1325 authorizes the imposition of criminal penalties when an alien has entered or attempted to enter the United States at any time or place other than as designated by immigration officials, eluded examination or inspection by immigration officials, or attempted to enter or obtained entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, while 8 U.S.C. § 1326 makes it a criminal violation for an alien who

---

[5] R.C. 2941.06 currently provides, in relevant part:

> The jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that A.B., on the … day of …, at the county of … aforesaid, did … (here insert the name of the offense if it has one, such as murder, arson, or the like, or if a misdemeanor having no general name, insert a brief description of it as given by law) contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

  is under an outstanding order of exclusion, deportation, or removal to reenter the United States.

  Because certain provisions of federal immigration law constitute the commission of a criminal offense when violated, violations of these provisions are breaches of the public peace for purposes of R.C. 311.07(A) and R.C. 311.08(A). Therefore, under R.C. 311.07(A) and R.C. 311.08(A), a county sheriff may arrest and detain an alien without a warrant when evidence establishes probable cause to believe that the alien has violated a criminal provision of federal immigration law. (Footnote added and footnote omitted.)

Because a county sheriff's statutory duty to preserve the public peace authorizes the sheriff to enforce the criminal provisions of federal immigration law, "the sheriff may exercise a reasonable discretion in determining the manner in which he will exercise such power." 1987 Op. Att'y Gen. No. 87-099 at 2-658; 1986 Op. Att'y Gen. No. 86-023 at 2-121. *See generally Fed. Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 541, 118 N.E. 103 (1917) (a public officer "is naturally and necessarily vested with a wide discretion to do such incidental things as are reasonably and manifestly" in the public's interests to perform the act, provided such things are not prohibited by statute); *State ex rel. Hunt v. Hildebrant*, 93 Ohio St. 1, 12, 112 N.E. 138 (1915) (an officer who is required to perform a duty "has implied authority to determine, in the exercise of a fair and impartial official discretion, the manner and method of doing the thing commanded; otherwise, full directions would have been given the officer or the duty would not have been imposed upon him"), *aff'd*, 241 U.S. 565 (1916).

The General Assembly has in general terms authorized a county sheriff to enforce the criminal provisions of federal immigration law and has not limited the manner in which the sheriff may enforce such provisions. Under 8 U.S.C. § 1357(g), federal officials are explicitly permitted to enter into a written agreement so as to provide state and local law enforcement officials with assistance in enforcing the criminal provisions of federal immigration law. Such assistance is in the form of providing state and local law enforcement officials with access to federal property or facilities, 8 U.S.C. § 1357(g)(4), and providing supervision and training regarding the enforcement of the criminal provisions of federal immigration law, 8 U.S.C. § 1357(g)(2) and (3). Federal assistance in enforcing the criminal provisions of federal immigration law has as its purpose the preservation of the public peace. Thus, to the extent that an agreement entered into under 8 U.S.C. § 1357(g) is an appropriate manner by which a county sheriff may obtain assistance in enforcing the criminal provisions of federal immigration law, a county sheriff does not abuse his discretion in entering into an agreement under 8 U.S.C. § 1357(g) with federal immigration officials. *See generally* 1983 Op. Att'y Gen. No. 83-064 at 2-269 ("since by statute the joint boards of county commissioners may engage in real estate transactions and construction agreements in order to organize and build a multicounty detention and treatment facility, the joint boards must necessarily and reasonably have the ability to employ legal counsel to advise them with respect to such matters" (citations omitted)); 1928 Op. Att'y Gen. No. 2955, vol. IV, p. 2736, at 2740 (finding implied authority for a township to obtain fire services by contract with a neighboring municipal corporation and stating: "The delegation

of a power to accomplish a certain end, necessarily carries with it the power to do all things necessary to consummate that purpose").

Moreover, the General Assembly has expressed an intent that state and local law enforcement officers cooperate with federal immigration officials in the enforcement of the criminal provisions of federal immigration law. R.C. 9.63(A) requires local law enforcement officers, including county sheriffs, to comply with any lawful request for assistance made by federal immigration officials while carrying out a federal immigration investigation. R.C. 9.63(A) thus demonstrates an intent on the part of the General Assembly that a county sheriff should cooperate with federal immigration officials in the enforcement of the criminal provisions of federal immigration law. *See* note four, *supra*. Such cooperation may include entering into an agreement under 8 U.S.C. § 1357(g) whereby a county sheriff assists federal immigration officials in enforcing the criminal provisions of federal immigration law.

In light of the language of R.C. 9.63(A) and that agreements entered into under 8 U.S.C. § 1357(g) are used to assist state and local law enforcement officers in the enforcement of the criminal provisions of federal immigration law, it appears that it is reasonable for a county sheriff to enter into a written agreement under 8 U.S.C. § 1357(g) to enforce the criminal provisions of federal immigration law for the purpose of preserving the public peace in the county. Accordingly, for the purpose of carrying out his duties under R.C. 311.07 and R.C. 311.08, a county sheriff may enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the criminal provisions of federal immigration law.[6]

---

[6] Deputy sheriffs performing a function of an immigration officer in relation to the enforcement of the criminal provisions of federal immigration law must comply with all applicable state, federal, and international laws meant to protect the rights of aliens. *See* 2007 Op. Att'y Gen. No. 2007-018, slip op. at 7-9. *See generally Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir. 1983) ("arrests for federal offenses can be justified by state law authorization only if the arrest procedures do not violate the federal Constitution"), *overruled in part on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 991 F. Supp. 895, 900 (N.D. Ohio 1997) (the Fourth Amendment to the United States Constitution "applies to citizens and aliens alike"). *See generally also* 8 U.S.C. § 1357(g)(2) ("[a]n agreement under this subsection shall require that an officer or employee of a State or political subdivision of a State performing a function under the agreement shall have knowledge of, and adhere to, Federal law relating to the function, and shall contain a written certification that the officers or employees performing the function under the agreement have received adequate training regarding the enforcement of relevant Federal immigration laws"); 2007 Op. Att'y Gen. No. 2007-018, slip op. at 7 n.7 ("[a] county sheriff who violates the rights of an alien may subject the county to liability under 42 U.S.C. § 1983").

Authority of a County Sheriff to Enforce the Civil Provisions of Federal Immigration Law Pursuant to a Written Agreement with USICEO or USDHS

We shall now consider whether a county sheriff's duty to preserve the public peace includes the authority to enforce the civil provisions of federal immigration law, and, if so, whether a county sheriff may enter into a written agreement under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the civil provisions of federal immigration law.

2007 Op. Att'y Gen. No. 2007-018 determined that a county sheriff may not arrest and detain an alien for a violation of a civil provision of federal immigration law. This conclusion followed from the Ohio Supreme Court's holding in *City of Akron v. Mingo*, 169 Ohio St. 511, 160 N.E.2d 225 (1959). In that case, the court determined that the immunity from arrest conferred under R.C. 2331.11-.14 applies only to civil arrests, not criminal arrests. In making this distinction, the court stated that, pursuant to R.C. 2331.13,[7] the immunity conferred under R.C. 2331.11-.14 does "not extend to cases of treason, felony, or breach of the peace." The court then concluded, further, that the term "breach of the peace" historically connotes violations of criminal laws. Thus, the court recognized that a violation of a civil law does not constitute a breach of the peace, as that term is commonly understood.

Moreover, the Ohio Supreme Court's view of what constitutes a breach of the peace accords with that of the United States Supreme Court. In several cases, the Court has indicated that breaches of the peace include violations of criminal laws, but not civil laws. *Gravel v. United States*, 408 U.S. 606, 613-14 (1972); *Long v. Ansell*, 293 U.S. 76, 82-83 (1934); *Williamson v. United States*, 207 U.S. 425, 442-46 (1908). *See generally* Akhil Reed Amar & Neal Kumar Katyal, Commentary, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 Harv. L. Rev. 701, 710 (1995) ("[a]s Article I [of the United States Constitution] makes clear, members of Congress are privileged from arrest while Congress is in session. The Framers intended "Arrest" in this Clause to mean civil arrest, not criminal arrest. The Arrest Clause explicitly exempts cases of 'Treason, Felony and Breach of the Peace'; and both the clear language of Blackstone's *Commentaries* and English debates well known to the Framers stressed that this exempting phrase was a term of art encompassing all crimes").

In light of the case law holding that a violation of a civil law does not constitute a breach of the peace, as that term is commonly understood, a county sheriff's duty to preserve the peace

---

[7] R.C. 2331.13 provides:

[R.C. 2331.11-.14] do not extend to cases of treason, felony, or breach of the peace, nor do they privilege any person specified in such sections from being served with a summons or notice to appear. Arrests not contrary to such sections made in any place or on any river or watercourse within or bounding upon this state are lawful.

must be interpreted to apply only to the enforcement of criminal laws, rather than civil laws. *See generally* R.C. 1.42 ("[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"); *Brennaman v. R.M.I., Co.*, 70 Ohio St. 3d 460, 464, 639 N.E.2d 425 (1994) ("[i]t is a general axiom of statutory construction that once words have acquired a settled meaning, that same meaning will be applied to a subsequent statute on a similar or analogous subject"). This means that a county sheriff's duty to preserve the public peace under R.C. 311.07(A) and R.C. 311.08(A) does not include the power to enforce the civil provisions of federal immigration law.[8] Accordingly, insofar as R.C.

---

[8] We understand that the activities that may be included within the authority of a county sheriff to preserve the public peace are not, as a general matter, amenable to precise demarcation and, as such, a sheriff may exercise a reasonable discretion in determining the manner in which he may exercise such power. 1987 Op. Att'y Gen. No. 87-099 at 2-658; 1986 Op. Att'y Gen. No. 86-023 at 2-121. "It is evident, therefore, that the sheriff's duty to 'preserve the public peace' under R.C. 311.07 [and R.C. 311.08] permits him, in the appropriate circumstances, and in the exercise of a reasonable discretion, to take those actions reasonably necessary to protect the general public welfare." 1987 Op. Att'y Gen. No. 87-099 at 2-658; *see, e.g.*, 1997 Op. Att'y Gen. No. 97-015 (a county sheriff may, pursuant to R.C. 311.07 and R.C. 311.08, declare a snow emergency and temporarily close state roads and municipal streets within his jurisdiction when such action is reasonably necessary for the preservation of the public peace); 1987 Op. Att'y Gen. No. 87-099 (a county sheriff, pursuant to the authority conferred upon him by R.C. 311.07 and R.C. 311.08 to preserve the public peace, may order the evacuation of persons residing or otherwise situated in the vicinity of a hazardous materials accident or emergency, enter upon private property where hazardous materials are located for the purpose of extinguishing a pilot light or other ignition source, and commandeer a vehicle or other heavy equipment for use at the site of, or in conjunction with, a hazardous materials accident or emergency); 1986 Op. Att'y Gen. No. 86-023 (a county sheriff may, pursuant to R.C. 311.07 and R.C. 311.08, declare a snow emergency and temporarily close county and township roads within his jurisdiction when such action is reasonably necessary for the preservation of the public peace); 1979 Op. Att'y Gen. No. 79-027 at 2-92 (a county sheriff's duty to preserve the public peace "permits him to participate in emergency rescue operations and to incur necessary transportation expenses related thereto"); 1958 Op. Att'y Gen. No. 3039, p. 676 (a county sheriff's duty to preserve the public peace authorizes him to keep the public highways free of damaged automobiles and remove injured and unconscious motorists and other persons from such highways).

Nevertheless, a county sheriff must act within the bounds of his statutory authority. 1987 Op. Att'y Gen. No. 87-099 at 2-660. Because courts have traditionally held that breaches of the public peace are limited to violations of criminal laws, rather than civil laws, a county sheriff may not exercise his discretion and determine that his power to preserve the public peace includes the authority to enforce the civil provisions of federal immigration law. *See generally Geauga County Bd. of County Comm'rs v. Geauga County Sheriff*, 2003-Ohio-7201, 2003 Ohio App. LEXIS 6508, at ¶43 (Geauga County Dec. 31, 2003) ("[w]hile this court would readily

311.07 and R.C. 311.08 do not authorize a county sheriff to enforce the civil provisions of federal immigration law, it also follows that a county sheriff may not enter into a written agreement with USICEO or USDHS under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the civil provisions of federal immigration law.

### Conclusions

Based on the foregoing, it is my opinion, and you are hereby advised as follows:

1. For the purpose of carrying out his duties under R.C. 311.07 and R.C. 311.08, a county sheriff may enter into a written agreement with the United States Immigration and Customs Enforcement Office or the United States Department of Homeland Security under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the criminal provisions of federal immigration law.

2. Under Ohio law, a county sheriff may not enter into a written agreement with the United States Immigration and Customs Enforcement Office or the United States Department of Homeland Security under 8 U.S.C. § 1357(g) whereby deputy sheriffs are empowered to perform a function of an immigration officer in relation to the enforcement of the civil provisions of federal immigration law.

Respectfully,

MARC DANN
Attorney General

---

agree that [the sheriff] was certainly qualified to state whether a specific act was generally related to maintaining the peace, his superior knowledge is not controlling as to the proper legal interpretation of R.C. 311.07(A)").